IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JAMES RUSSELL MILLER                                                   PLAINTIFF

v.                                                         NO. 3:14-cv-00427-HTW-LRA
                                                           HEARING REQUESTED

MANAGEMENT & TRAINING CORPORATION;
PATRICIA DOTY; PRISCILLA DALY;
and LAWRENCE MACK;                                                    DEFENDANTS

**PLAINTIFF'S BRIEF IN SUPPORT OF HIS RESPONSE TO DEFENDANT MANAGEMENT & TRAINING CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

COMES NOW the Plaintiff, by and through the undersigned counsel, and for this his Brief in Support of his Response to Defendant Management & Training Corporation (hereinafter "MTC")'s Motion for Partial Summary Judgment, would state as follows:

**INTRODUCTION**

MTC presents, well before the close of discovery, a motion for partial summary judgment that not only misstates the law, it presents no facts for Plaintiff to either agree with or dispute; instead, it ignores controlling Mississippi Supreme Court precedent and asks Plaintiff to either concede the lack of an issue of fact or *divine* what facts they claim are undisputed. It is impossible to tell at this early juncture whether MTC is entitled to judgment as a matter of law; thus, the motion is due to be denied. The record discloses a dispute of material fact already; even if it did not, the record already demonstrates that Plaintiff is entitled to further discovery regarding his *McArn* claim.

1

In sum: the indictment handed down by this Court suggests that MTC was involved in a conspiracy in some capacity regarding Christopher Epps, Cecil McCrory, and Mississippi Department of Corrections contracts. While it is possible that MTC's role in this conspiracy was "victim," if their bid to operate the Walnut Grove facility was accepted despite being short-staffed because of their relationship with McCrory, then their short-staffing would be part of the criminal conspiracy to deprive the State of Mississippi of Epps' honest services. The only people in this matter who know whether this is the case are Epps, McCrory, and MTC. None of them have been deposed; thus, even if, on the record presented, MTC could show a lack of disputed fact, they would not be entitled to judgment as a matter of law at this point in the proceedings.

Finally, even if MTC were correct that there were no issue of disputed fact *and* there was no discovery still awaiting completion, they would not be entitled to judgment as a matter of law. The authority on which MTC relies is not binding, and their reading of that authority is misleading. When the entire scope of authority is considered, including Mississippi Supreme Court authority subsequent to MTC's cited case law, it becomes clear that their reliance is misplaced.

## **FACTS**

This case begins in August 2012, when MTC received the first of several contracts they were awarded by the Mississippi Department of Corrections (hereinafter "MDOC"). (Ex. 1 – Epps and McCrory Indictment - ¶ 31.). However, the story begins with the bid that MTC submitted to MDOC. That bid would disclose

whether MTC ever intended to reach the staffing requirements. A bid that failed to meet constitutional staffing levels but was nevertheless awarded would certainly justify a $12,000 per month "consultant fee" to Cecil McCrory, who has since pleaded guilty to bribing Mississippi Corrections Commissioner Christopher Epps with that fee – which fee Epps negotiated with MTC (Ex. 1, ¶ 33). Bribing Epps to accept an unconstitutionally understaffed bid would make MTC an as-yet unindicted co-conspirator in Epps and McCrory's scheme, and would make the understaffing an act in furtherance of that conspiracy.

However, Plaintiff must frankly admit that thus far, all of this is conjecture – well-informed and supported conjecture based on the guilty pleas of Epps and McCrory, but conjecture nonetheless. Further discovery is required to determine to what extent MTC was a victim or a co-conspirator.  Tene Wilson, the "subordinate female officer" whom MTC claims admitted to inappropriate conduct with the Plaintiff, testified in deposition that not only did the inappropriate conduct never happen, but that the story was fabricated by her supervisors to enable them to fire the Plaintiff (Ex. 2 – Tene Wilson deposition excerpt). It is telling that MTC does not disclose this fact to the Court in their motion.

Thus, Plaintiff can no longer trust that MTC's production of documents is accurate and complete. Plaintiff seeks to triangulate MTC's production of documents by requesting the same documents from the Mississippi Department of Corrections. MTC has opposed this request (Ex. 3 – MTC's Petition for Protective Order, Hinds County Chancery Court). In short, MTC not only refuses to produce

3

documents clearly relevant to the *McArn* claim, they attempt to prevent Plaintiff from obtaining them any other way. Then they come before this Court and allege that Plaintiff cannot demonstrate MTC's illegal acts.

MTC's argument thus boils down to, "Plaintiff should not be allowed to obtain the evidence necessary to prove his claim – and before he manages to obtain that evidence over our objection, the Court should dismiss that claim." But that means that this motion is premature. Plaintiff should have the opportunity, under Rule 56(d), to "show by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Because denial of the summary judgment motion is appropriate relief under Rule 56(d)(1), Plaintiff requests that relief herein and incorporates by reference his motion, exhibits, and brief in support of all other appropriate relief under Rule 56(d), filed under separate cover as required by Local Rule 7(b)(3)(C).

## SUMMARY JUDGMENT STANDARD

Plaintiff adopts MTC's characterization of the summary judgment standard for the purposes of this motion, because MTC is not entitled to summary judgment on the *McArn* claim under Rule 56(d), because the facts demonstrate a genuine dispute of material fact on the *McArn* claim under the law MTC purports is applicable, and because MTC is not entitled to judgment as a matter of law on the *McArn* claim. Thus, under any summary judgment standard, the motion is due to be denied. Plaintiff reserves the right to challenge MTC's characterization of the summary judgment standard with regard to any future summary judgment motion.

## LAW AND ARGUMENT

**I.    It is reasonable to infer that MTC's bid to run Walnut Grove was unconstitutionally understaffed.**

Plaintiff has sought information from the state regarding MTC's bid to run Walnut Grove. MTC has opposed this request, claiming that it would hamper their competitiveness (Ex. 3). Plaintiff seeks this information from the state because Wilson's deposition discloses that MTC's production of documents cannot be trusted. But if MTC's "competitiveness" is driven by unconstitutional short-staffing, as forbidden by the *DePriest* consent decree, then the state should have never accepted MTC's bid. However, it is clear that Epps and McCrory arranged for MTC to receive MDOC contracts after MTC began bribing Epps through McCrory's "consulting fees," which Epps admitted he negotiated with MTC (Ex. 1). Whether MTC was aware that their payments to McCrory, negotiated by Epps, were being used to bribe Epps is a question that a jury should be entitled to decide.

In addition, further discovery may render this a moot issue, either demonstrating that Plaintiff cannot prove MTC's participation in the conspiracy, or that MTC cannot deny it. In any event, if a jury were to conclude, based on the allegations admitted to by Epps and McCrory, that MTC knew that their payments were bribes, and that their bid should have never been accepted, then maintaining short-staffing is an act in furtherance of the conspiracy to deprive the state of Mississippi of Epps' honest services, in violation of 18 U.S.C. §§ 1346 and 1349. This record – the allegations regarding the relationships between Epps, McCrory, and

MTC, and Epps and McCrory's admissions of guilt – is sufficient to allow a jury to infer that MTC, too, may have been guilty. And since their short-staffing was a proximate result of their receipt of the bid, it is inextricably intertwined with the potential honest-services fraud. Thus, MTC has not shown that the record as it currently exists eliminates a dispute of material fact as to whether MTC engaged in illegal acts. Summary judgment on the *McArn* claim is inappropriate.

II. **MTC's understanding of the law governing *McArn* claims is incomplete and incorrect.**

The Mississippi Supreme Court is the last word on Mississippi state law. Where the Mississippi Court of Appeals contradicts the Supreme Court, its decisions are not good law and are abrogated. MTC takes the position that "a prerequisite for a *McArn* wrongful discharge claim under either exception is that the alleged actions actually involve illegal activity." ECF No. 81 at p. 4. They cite a Mississippi Court of Appeals decision from 2004, *Hammons v. Fleetwood Homes of Mississippi, Inc.*, 907 So. 2d 357, 360 (Miss. App. 2004), for this proposition, and for the proposition that "[a] *McArn* claim does not require that a crime has already been committed, **but it does require that the acts complained of warrant the imposition of criminal penalties, as opposed to mere civil penalties.**" ECF No. 81 at p. 5 (quoting *Hammons*, 907 So. 2d at 360 (internal citations omitted)). But MTC's citation to authority is deeply misleading for this second proposition.

MTC moves the internal citations from that quote to the end, suggesting that the entire statement is supported by the Mississippi Supreme Court and the Northern

6

District of Mississippi. This is a curious choice, given the arrangement of those citations in the actual source material. The entire quotation, including internal citations, reads as "Applicability of the exception does not require that a crime has already been committed, *see Paracelsus Health Care Corp. v. Willard,* 754 So.2d 437, 443(¶ 23) (Miss.1999), but it does require that the acts complained of warrant the imposition of criminal penalties, as opposed to mere civil penalties. See *Howell v. Operations Mgmt. Intern., Inc.*, 161 F.Supp.2d 713, 719 (N.D.Miss. 2001) (citation omitted)." *Hammons,* 907 So. 2d at 360. Thus, it is clear that when the Court of Appeals said that criminal penalties were a prerequisite for a *McArn* claim, they were not citing to the Mississippi Supreme Court, unlike MTC's implication in their brief; instead, the Mississippi Supreme Court was the source of the statement that a crime need not have been committed.

For the proposition MTC relies on, the Court of Appeals relies on the United States District Court for the Northern District of Mississippi in *Howell.* The *Howell* Court relied on an earlier decision by the same judge as in *Howell. Howell,* 161 F. Supp. 2d at 719 (citing *Rosamond v. Pennaco Hosiery, Inc.*, 942 F.Supp 279, 286 (N.D. Miss 1996). The *Rosamond* decision relied on the fact that the illegal activity that the plaintiff opposed was discrimination against her in violation of the ADA. *Rosamond*, 942 F. Supp. at 286 ("If the plaintiff proves this allegation, she is entitled to recovery for retaliatory discharge in violation of the ADA."). In short, the entire edifice of "illegal activity" – which the Mississippi Supreme Court has never endorsed – relies on the fact that the Americans with Disabilities Act already

constitutes a public-policy exception to the employment at-will rule. *Rosamond*, 942 F. Supp. at 286 ("The refusal to extend protection under state law in this case does not frustrate public policy, however, for the plaintiff already has an adequate remedy for her termination in this context. . . . There would be no need to extend the exception in this case because existing law already protects the public policy at issue.")

Since it is clear that the question of whether Mississippi law requires criminal activity to make out a *McArn* claim is hardly resolved, given its bizarre origins, the question becomes whether the Mississippi Supreme Court has ever disagreed with the Court of Appeals' decision in *Hammons*. In *Hammons*, the Court of Appeals concluded that the employer's action in failing to deliver goods that had been paid for, and not crediting the customer for the undelivered goods, was not criminal. *Hammons*, 907 So. 2d at 360-361 ("Fleetwood Retail's failure to credit the Farmers for the original refrigerator after they opted for the upgrade does not constitute an illegal act, so Hammons could not possibly have reported an illegal scheme.").

In *DeCarlo v. Bonus Stores, Inc.*, the Mississippi Supreme Court was confronted with whether a situation almost exactly like the one in *Hammons* could give rise to a *McArn* claim. 989 So. 2d 351 (2008). In *DeCarlo*, the plaintiff discovered that his supervisor was engaged in billing the employer, through another business entity, for goods never delivered. *DeCarlo*, 989 So. 2d at 352, and was thereafter terminated. *Id.* at 353. The Mississippi Supreme Court held, in agreement with the district court, that these allegations constituted illegal activity under *McArn*.

*DeCarlo*, 989 So.2d at 353 ("the district court found that while Schafer's suspicious activities, as described by DeCarlo and if proven, amounted to an illegal activity"); *see Sears, Roebuck & Co. v. Learmonth*, 95 So.3d 633, 637 (Miss. 2012) ("[W]e decline to answer a certified question which, if the case were directly appealed to this Court, would not be reached under the facts presented."). Thus, if the district court's finding that the record disclosed illegal acts were erroneous, the Mississippi Supreme Court would have never addressed the certified question. The fact that it did so suggests that the Court of Appeals' decision in *Hammons* is problematic at best.

The district court in *DeCarlo* noted that the plaintiff's only assertion in support of the illegality of the defendant's acts was an assertion that they are illegal, "without offering any legal citation to a criminal statute that was violated. The defendants go so far as to assert that, in fact, the acts reported do not rise to the level of criminal activity." *DeCarlo v. Bonus Stores, Inc.* 2006 WL 1328890 (S.D. Miss. May 12, 2006). In short, exactly what MTC asserts in this case.

The district court rejected the defendant's argument in *DeCarlo*, holding, "the allegation that Schafer's company, Retail Services, had received money from Bonus for merchandise that it did not deliver smacks of criminality. Such acts would amount to criminal fraud and quite likely misappropriation and embezzlement. These are acts which would warrant the imposition of criminal penalties against Schafer." Again, this demonstrates that the *Hammons* decision is incoherent and

9

without support in the precedent, as an identical fact situation was found to support a *McArn* claim.

In this case, the Plaintiff not only has more evidence of criminality than the plaintiff in *DeCarlo* – he has guilty pleas related to the alleged illegal activity he opposed. In short, he surpasses the standard set by the Mississippi Supreme Court in *Willard* – he can allege that a crime "may have already been committed," *Hammons,* 907 So. 2d at 360; *see also Paracelsus Health Care Corp. v. Willard,* 754 So.2d 437, 443(¶ 23) (Miss.1999).

Because the law does not allow MTC to receive judgment as a matter of law on this record, the motion for summary judgment should be denied.

## CONCLUSION

MTC has misstated the facts, seeking to paint the Plaintiff as a sexual harasser when their star witness denied ever making the allegations they put in her mouth. They have sought to abuse the discovery process, bringing this motion *six months* before the close of discovery in hopes of preventing the Plaintiff from obtaining the evidence necessary to prove his claims. They claim that Plaintiff cannot demonstrate that their conduct was criminal, when in fact the record already discloses that MTC may have committed a crime which Plaintiff's conduct opposed. They have misstated the law. In short, MTC is not entitled to summary judgment on this matter on any element of this motion. This Court should deny the motion.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests an order denying MTC's Motion for Summary Judgment (ECF No. 80), and awarding Plaintiff any other or further relief as may be appropriate.

RESPECTFULLY SUBMITTED,

**/s Matthew Reid Krell**
Matthew Reid Krell (MSB# 103154)
Law Offices of Matthew Reid Krell
1805 8th Ave., #121
Tuscaloosa, AL 35401
matthewrkrell@gmail.com
662-469-5342
Attorney for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that I did, this seventh day of May, 2015, file a true and correct copy of the above with the Court's CM/ECF system, which should serve the same on all counsel of record.

**/s Matthew Reid Krell**
Matthew Reid Krell
Attorney for Plaintiff