**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**JAMES RUSSELL MILLER**                                                    **PLAINTIFF**

**VS**                                    **CIVIL ACTION NO.: 3:14-cv-427-HTW-LRA**

**MANAGEMENT & TRAINING CORPORATION, et. al.**

**OPINION**

Before this Court is Defendant Management & Training Corporation's ("Defendant") Motion for Summary Judgment on All Remaining Claims [Docket No. 135] filed on June 24, 2016. By this motion, Defendant contends that this court, pursuant to the authority of Rule 56[1], Federal Rules of Civil Procedure, should grant its motion and, afterwards, dismiss this lawsuit in its entirety.

Attacked by this motion are the claims of Plaintiff, James Russell Miller ("Plaintiff"), who in his complaint, raises assertions of gender discrimination under Title VII[2]; race discrimination under 42 U.S.C. §1981[3]; and a McArn[4] state law claim for wrongful

---

[1] F.R.C.P. 56: (a) <u>Motion for Summary Judgment or Partial Summary Judgment</u>. A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

[2] **42 U.S.C. § 2000e:** (a) <u>Employer practices:</u>  It shall be an unlawful employment practice for an employer--
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

[3] **42 U.S.C. § 1981:** (a) <u>Statement of equal rights:</u> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

[4] Wrongful termination under Mississippi law is a narrow tort-based claim that encompasses two public-policy exceptions to the employment at-will doctrine. In order to prevail on this claim, a plaintiff must establish that he was terminated either because (1) he refused to participate in an illegal activity, or (2) he reported an illegal activity of the

termination. The Plaintiff opposes this Summary Judgment motion, hoping to escape its clutches and have a chance at submitting his lawsuit to a jury for resolution. This court's analysis and ruling on this dispute follows.

## FACTS

Plaintiff began working on January 3, 2001 for a predecessor company of Defendant as a Correctional Officer. A short time thereafter, Defendant took over control of the facility at issue, namely, the Walnut Grove Correctional Facility located in Walnut Grove, Mississippi. Later he was promoted to the position of Chief of Security. Pl's. Compl. at 4. During his course of employment, Plaintiff allegedly reported several instances of what Plaintiff said he believed to be violations of facility policies. He adds that he also reported violations of various policies of the State of Mississippi. According to Plaintiff he brought these reports to the attention of Priscilla Daly, Warden, and Lawrence Mack, Facility Director, who were both employed at the Defendant's facility. Pl's. Compl. at 6.

In these alleged reports, Plaintiff says he stated that he had observed repeated failings by the facility to meet the requisite standards manifesting the number of personnel required for the number of prisoners held at the facility. Pl's. Compl. at 7. Convinced that this discrepancy was illegal, he believed these purported violations to be illegal under a Consent Decree entered in a separate civil lawsuit[5] regarding inmates housed at Walnut Grove Correctional Facility. This Consent Decree was the end result of a litigation in the United States District Court for the Southern District of Mississippi,

---

employer. *McArn v. Allied Terminix Co*., 626 So.2d 603, 606-607 (Miss. 1993).
[5] *DePriest v. Walnut Grove Corr. Auth*., Cause No. 3:10-cv-663-CWR-FKB (S.D. Miss. June 10, 2015

between Charlton DePriest, et. al., and Walnut Grove Correctional Authority, et. al.

DePriest in that suit had sued Walnut Grove Correctional Authority for violations of the

Eighth Amendment[6] rights of inmates housed at Walnut Grove Correctional Facility.

This litigation pressed on for six days, and on March 26, 2012, the plaintiffs and the

Mississippi Department of Corrections entered into a Consent Decree with the purpose

of resolving disparate conditions alleged within Walnut Grove Correctional Facility.

The lawsuit itself was totally civil; neither its enforcement, nor any penalties

associated therewith were criminal. Under the terms of this Consent Decree, Walnut

Grove Correctional Facility was to implement measures regarding staffing and housing

of inmates in order to curtail further Constitutional violations under monitoring by the

Mississippi Department of Corrections and their named monitors. Plaintiff alleges that

the Defendant herein knew that the facility was in violation of the Consent Decree,

specifically relative to staffing requirements, based on Plaintiff's reports. Pl.'s Compl. at

27.

The provisions of this Consent Decree stated that the District Court would retain

jurisdiction to enforce the terms thereof, and that any disputed beliefs as to enforcement

of the terms of the Consent Decree could ultimately be resolved upon a request to the

Court to enforce the terms therein. The Consent Decree contained no mention of

criminal penalties as a result of non-compliance with the terms. [Docket No. 80, Exhibit

5].

Plaintiff was terminated on June 7, 2013, after his employer had determined that

Plaintiff had engaged in inappropriate sexual conduct with a subordinate female

---

[6] U.S. Const. amend. VIII: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

employee. This employee admitted to the inappropriate conduct. (Dkt. No. 136 at p. 2).

Plaintiff, though, denies this conduct ever occurred. Further, he asserts that he actually was terminated not for this alleged incident, but for his reporting the supposed violations of the Consent Decree. He adds that he also had reported that Defendant had engaged in gender and race discrimination and that his employer was vindictive about those reports, as well. Accordingly, says Plaintiff, Defendant's asserted grounds for having terminated his employment were pre-textual and but a ruse to quiet his critical voice.

## JURISDICTION

This is an action brought under the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* for gender discrimination, for race discrimination under 42 U.S.C. § 1981, and for wrongful termination as a result of opposing unlawful activity under the laws of the State of Mississippi. The Court, therefore, has federal question jurisdiction over the gender and race discrimination claims pursuant to 28 U.S.C. § 1331[7], and supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367[8].

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant has the burden of initially demonstrating through evidentiary materials that there is no actual dispute as

---

[7] **28 U.S.C. § 1331**: The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

[8] **28 U.S.C. § 1367**: (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 3l7, 323 (1986). If the evidence favoring the non-moving party is insufficient for a jury to enter a verdict in the non-moving party's favor, summary judgment is mandated. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986).

In discerning whether summary judgment is appropriate, this court must look to pleadings, depositions, admissions and answers to interrogatories, as well as affidavits to determine whether a genuine issue of material fact exists. *Evans v. City of Marlin, Texas*, 986 F.2d 104, 107 (5th Cir. 1993). The Court's definition of "material" pertains to "disputes over facts that might affect the outcome of the suit under the governing law. . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (citing 10 A.C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2725, pp. 93-95 (1983)).

When the movant has carried his/her Rule 56(a) burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.* 475 U.S. 574, 586 (1986). The Court must resolve all reasonable doubts about the existence of a genuine issue of material fact against the movant. *Byrd v. Roadway Express, Inc.,* 687 F.2d 85, 87 (5th Cir. 1982).

## DISCUSSION

A. Plaintiff's Claim of Gender Discrimination.

This Court is not persuaded by Plaintiff's assertion of Title VII gender discrimination. In order to establish a prima facie case of gender discrimination, Plaintiff must show that (1) he is a member of a protected class, (2) he suffered an

adverse employment action, and (3) individuals outside his protected class who were similarly situated, or in "nearly identical" circumstances, were treated differently. *Barrientos v. City of Eagle Pass, Tex.*, 444 F. App'x 756, 758 (5th Cir. 2011). Here, Plaintiff cannot establish a prima facie case of gender discrimination because he cannot show that similarly situated individuals outside his protected class were treated differently, nor were any individuals in "nearly identical" circumstances. Plaintiff was employed as Chief of Security at the Defendant's facility, and it is undisputed that no females have ever held that position. Additionally, he was replaced by another male employee. Therefore, Plaintiff cannot show that a similarly situated individual outside his protected class was treated differently.

Once the plaintiff has shown a prima facie case of discrimination, the defendant then has an opportunity to present a legitimate, non-discriminatory reason for its conduct. *Id.* at 758. If such a reason is provided by the defendant, the plaintiff must show that the reasons given were merely pre-textual in order to avoid summary judgment. *Id.*

Even if Plaintiff were to establish a prima facie case of gender discrimination, he would still not be able to show that the reason given for his termination was a pretext for gender discrimination. Plaintiff was terminated by Defendant for engaging in inappropriate sexual conduct with a subordinate female employee, Tene Wilson. Wilson admitted to the inappropriate conduct in May of 2013 in an Employee Incident Statement submitted to Warden Daly, in which Wilson stated "I, c/o[9] Wilson,

---

[9] Here, "c/o" is a common abbreviation for "Correctional Officer".

have been sexually involved with Major Miller in the office next to intake." [Docket No. 135, Exhibit 3 "Tene Wilson Statement"]. Wilson's testimony has remained consistent throughout her deposition transcripts, in which she elaborated on her previous statement by admitting that "we [Tene Wilson and Plaintiff] kissed and we did touch each other". [Docket No. 135, Exhibit 4 "Tene Wilson Deposition Transcript", p. 4]. Wilson's deposition transcripts continue to admit that this inappropriate conduct occurred while she and Plaintiff were at work:

> "Q: Let's talk about the first sentence again, and you said the kissing and touching each other's buttocks in the room next to intake. How did you guys decide to meet up in this room next to intake?
>
> A: We didn't decide to meet up. I know one day it was a trip – a transport fixing to go out or something that had happened and we both was – I think I- I'm trying to see. I was fixing to go on and transport and he had to sign off for the transport or something and we both was back there waiting on – I was waiting on the transport bus to come around.
>
> Q: And then what happened?
>
> A: We was both in there. We was talking. And it just happened."

*Id.* at p. 7.

Plaintiff was issued a Notice of Caution[10] letter on June 6, 2013, notifying Plaintiff that he would be terminated from his position as Chief of Security with Defendant. The letter stated that after investigating allegations of Plaintiff's inappropriate sexual conduct with Wilson, Plaintiff was found in violation of Defendant's conduct policy,

---

[10] Docket No. 135, Exhibit 2.

specifically by engaging in "Infractions which may result in immediate dismissal-Category II: Rule 10. Unprofessional, obscene, abusive, inappropriate or suggestive comments, actions, or behavior." Accordingly, Defendant had a legitimate reason for terminating Plaintiff, and Plaintiff cannot establish that Defendant's reason for his termination was a pre-text for gender discrimination.

B.  Plaintiff's Claim of Race Discrimination.

Plaintiff's claim of race discrimination fails for the same reason that his claim of gender discrimination fails. The Fifth Circuit has emphasized that the elements of a Section 1981 claim and a Title VII claim are identical. *Anderson v. Douglas & Lomason Co., Inc.*, 26 F.3d 1277, 1284 n.7 (5th Cir. 1994). A court may therefore "employ only one analysis in evaluating the [Plaintiff's] Title VII and § 1981 claims." *Id.* In light of this, the Court is also not persuaded by Plaintiff's assertion of race discrimination.

Again, in order to establish a prima facie case of gender or race discrimination, a plaintiff must show that (1) he is a member of a protected class, (2) he suffered an adverse employment action, and (3) similarly situated individuals outside his protected class, or in "nearly identical" circumstances, were treated differently. *Barrientos*, 444 F. App'x at 758. Here, Plaintiff cannot show that a similarly situated individual outside his protected class was treated differently, nor were any individuals in "nearly identical" circumstances, and therefore cannot establish a prima facie case of race discrimination.

C.  Plaintiff's Claim under McArn for wrongful termination.

Mississippi has followed the "at-will employment" doctrine since 1858,

meaning that unless an employment contract exists between employer and employee, either party may terminate the work relation at will[11]. An employer, then, may discharge an employee "at the employer's will for good reason, bad reason, or no reason at all, excepting only reasons independently declared legally impermissible." *Swindol v. Aurora Flight Scis. Corp.*, No. 2015-FC-01317-SCT at 20 (Miss. 2016).

Plaintiff asserts, though, that he was wrongfully terminated pursuant to the McArn exception to the Mississippi "at-will employment" doctrine. In *McArn v. Allied Bruce-Terminix Co., Inc.*, 626 So.2d 603 (Miss. 1993), the Mississippi Supreme Court recognized two exceptions to Mississippi's at-will employment rules: that an employee is not barred from pursuing a wrongful termination suit if the employee was terminated for (1) refusing to participate in, or oppose, any illegal activities, or (2) reporting any illegal activities. In support of his McArn claim, Plaintiff asserts that he was terminated for reporting violations, which he believes were illegal, namely, the staffing standard required by the Consent Decree regarding inmates housed at the facility. According to Plaintiff, his discharge falls under the second prong of the McArn theory.

In order to meet the requirements for a McArn claim, the alleged actions reported must actually involve illegal activity. *Hammons v. Fleetwood Homes of Miss., Inc.*, 907 So.2d 357, 360 (Miss. App. 2004). The challenged acts also must warrant the

---

[11] When faced with a plaintiff who did not present evidence of an existing employment contract, the Mississippi Supreme Court recognized that the plaintiff "would seem to fall victim to Mississippi's adherence to the common law rule that where there is no employment contract (or where there is a contract which does not specify the term of the worker's employment), the relation may be terminated at will by either party. Mississippi has followed this rule since 1858. *Butler v. Smith & Tharpe*, 35 Miss. (6 Geo.) 457, 464 (1858)." *Perry v. Sears, Roebuck & Co.*, 508 So.2d 1086, 1088 (Miss. 1987).

imposition of criminal penalties, not merely civil penalties. Id. (citing *Paracelsus Health Care Corp. v. Willard*, 754 So.2d 437, 443 (Miss. 1999); *Howell v. Operations Mgmt. Intern., Inc.*, 161 F.Supp. 2d 713, 719 (N.D. Miss. 2001)). The Fifth Circuit, applying Mississippi law, has consistently adopted this jurisprudence, holding that the actions complained of under McArn must be criminal in nature to succeed on a wrongful termination claim. *King v. Newton County Bd. of Sup'rs.*, 144 Fed. Appx. 381, 385-386 (5th Cir. 2005).

Here, Plaintiff has presented no evidence that any supposed violations of the Consent Decree were criminal in nature, or that any alleged violations would warrant the imposition of criminal penalties. A plain reading of the Consent Decree shows as much. The Decree was entered as a court-approved settlement of a civil lawsuit, not a criminal one. Plaintiff's surmise that Decree violations could morph into criminal violations, or result in criminal sanctions by the court are simply outside the bounds of the Decree's civil-natured remedy.

Plaintiff next argues that his lawsuit is saved from Mississippi's at-will employment doctrine by *Swindol v. Aurora Flight Scis. Corp.*, No. 2015-FC-01317-SCT at 20 (Miss. 2016), arguing that the Consent Decree was "express legislative action" and, therefore, protected.

*Swindol* originated in the United States District Court for the Northern District of Mississippi, and dealt with a situation where an employer had fired an employee for having a firearm in his [the employee's] locked vehicle parked in the employer's parking lot. Mississippi Code Annotated section 45-9- 55 (Supp. 2016), enacted on July 1, 2006, has made it "legally impermissible" for an employer to terminate an

employee for having a firearm inside his locked vehicle on company property. The United States District Court for the Northern District dismissed the case, holding that this development was not recognized as one of the two exceptions found in McArn.

After the district court dismissed the case, the Fifth Circuit certified[12] to the Mississippi Supreme Court the following question: whether an employer may be liable for discharging an employee for storing a firearm in a locked vehicle on company property in a manner that is consistent with Miss. Code Ann. §45-9-55, which prohibited enforcement of employer policy prohibiting firearms in vehicles.

In due course, the Mississippi Supreme Court answered the question. The Mississippi Supreme Court stated that creating a new exception to the at-will doctrine was unnecessary as the circumstance at hand fell under the "express legislative action" and "state law prohibition" exceptions envisioned by the Mississippi Supreme Court in *Kelly v. Mississippi Valley Gas Co.*, 397 So. 2d at 875. Thus the *Swindol* court summarized: "an employee may be discharged at the employer's will for good reason, bad reason, or no reason at all, *excepting only reasons independently declared legally impermissible.*" *Swindol* at ¶20, citing *McArn*, 626 So. 2d at 606 (quoting *Shaw v. Burchfield*, 481 So. 2d 247 (Miss. 1985)) (emphasis added by court in *Swindol* opinion).

This court finds that the Consent Decree at issue was not an "express legislative action". The Consent Decree was a judicial fiat, not a legislative one, between litigating parties in a lawsuit which was wholly civil. This court, accordingly, is

---

[12] "A number of states have adopted the Uniform Certification of Questions of Law Act (the "Certification Act"), either substantially or in its entirety, which empowers state supreme courts to answer certified questions when a proceeding before the certifying court involves questions of law that may be determinative of the pending case, and when the certifying court believes that there is no controlling precedent in the state." 69 A.L.R.6th 415 (2011)

persuaded that this matter does not involve any "express legislative action".

Plaintiff, thus, is left with only his asserted "belief" that Defendant's alleged violation of the staffing standard was criminal in nature. His naked belief is insufficient to support a McArn cause of action. "[A] mere good-faith belief that employer activity is criminally illegal without showing the activity to be actually criminal in nature is insufficient to provide recourse to a discharged plaintiff under the McArn exception." *White v. Cockrell*, 190 So.3d 878, 883 (Miss. Ct. App. 2015).

This court finds, accordingly, that Plaintiff cannot squeeze his contentions through McArn's narrow portal. The Mississippi Supreme Court has been quite reluctant to enlarge or modify this hoary pronouncement of Mississippi employment law and this court is convinced that Mississippi would be unwilling to stretch these stingy exceptions to the extension argued by Plaintiff. *Erie v. Tompkins*, 304 U.S. 64, 78-79, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

## CONCLUSION

This Court, after reviewing submissions from all parties and analyzing the relevant jurisprudence and public policies, finds that Plaintiff has not met his burden of proof in establishing that Defendant engaged in gender discrimination under Title VII or race discrimination under 42 U.S.C. § 1981. Additionally, this Court is not persuaded by Plaintiff's assertion of wrongful termination under McArn, as Plaintiff has not met the requirements prescribed by Mississippi law for such a claim.

This Court hereby GRANTS Defendant's Motion for Summary Judgment on All Remaining Claims [Docket No. 135], and dismisses Plaintiff's claims with prejudice. All pending motions and outstanding matters in this case are hereby declared

MOOT. The Court will enter a separate judgment in accordance with the local rules.


**SO ORDERED** this _21st_____ day of _March_____, 2017.

                              s/ HENRY T. WINGATE_____
                              UNITED DISTRICT COURT JUDGE

13