**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | |
|---|---|
| JAMES RUSSELL MILLER,     )<br>    *Plaintiff*      )<br>                                 )<br>vs.                              )<br>                                 )<br>MANAGEMENT & TRAINING  )<br>CORPORATION, *et al.*,     )<br>    *Defendants*     ) | **Civil Action No. 3:14-cv-000427-HTW-LRA** |

**MEMORANDUM OF AUTHORITIES SUPPORTING MTC'S
MOTION FOR AWARD OF ATTORNEYS' FEES**

**COMES NOW** Defendant Management & Training Corporation ("MTC") through counsel and in accord with the Federal Rules of Civil Procedure, and moves this Court for an Order granting its reasonable attorneys' fees incurred in defending against this civil action, and would show in support the following:

**INTRODUCTION**

Plaintiff, James Russell Miller, was terminated by MTC for engaging in inappropriate sexual misconduct with a subordinate employee while on the job site. MTC had a policy against the sort of behavior, and it followed that policy when it fired Miller. Miller, disgruntled by the decision, brought claims against MTC, Warden Lawrence Mack, Deputy Warden Patricia Doty, and Deputy Warden Patricia Daly for violations of the Civil Rights Act of 1876, Title VII of the Civil Rights Act of 1964, as amended, and violations of Mississippi's common law. Recognizing the futility of his claims, Miller conceded summary judgment against the individual defendants and largely conceded that his federal claims had no merit. As to MTC, the Court granted summary judgment on all claims, specifically finding that Miller failed to establish a

*prima facie* case of discrimination on the basis of race or gender. Both Title VII and 42 U.S.C. § 1981 contain provisions allowing attorneys' fees to the prevailing party. Because MTC prevailed on all claims, it is entitled to its reasonable attorneys' fees.

In addition to having flawed legal theories which were unsupported by the facts, a cursory review of the docket in this case demonstrates that Miller and his counsel used this litigation not as a vehicle for justice or search for the truth, but as their own, personal civil procedure class. Like any law school class, this one was not tuition free. Miller and/or his counsel took positions which were baseless, denied by this Court, and which unnecessarily prolonged this litigation, costing MTC tens of thousands of dollars in legal fees.

Two of the three attorneys for Miller hold themselves out to be knowledgeable and experienced employment discrimination practitioners. They knew throughout this litigation that the attorneys' fees provision of Title VII and 42 U.S.C. § 1981 loomed and would be triggered should they fail to prevail. They also knew that they were under a duty imposed by 28 U.S.C. § 1927 not to unnecessarily multiply the proceedings. Yet time and again, they pushed claims and legal positions which lacked any basis in law or fact. If there was ever a case for a prevailing defendant to be awarded its attorneys' fees, it is this one.

## FACTUAL/PROCEDURAL BACKGROUND

The Court is familiar with the facts of this case. MTC terminated Miller on June 7, 2013 after learning that he engaged in sexual misconduct with a subordinate correctional officer, Tene Wilson, on the grounds of Walnut Grove Correctional Facility. To replace Miller, MTC hired a white male, Terry Daniel, to serve as the Chief of Security at Walnut Grove. On June 21, 2013, Miller filed a Charge of Discrimination against Walnut Grove Correctional Facility alleging discrimination on the basis of sex and retaliation.

On May 28, 2014, after receiving a notice of right to sue letter from the EEOC, Miller filed suit in this Court against MTC, Patricia Doty, Priscilla Daly, Lawrence Mack, and Keith O'Banion.[1]  This first crack of the litigation whip was, by any standard, a "shotgun pleading," which alleged a host of misdeeds against each Defendant named, without any specification.[2]  Recognizing the fallacy, Miller conceded and dismissed many of the improper and misjoined claims.[3]  Discovery commenced and lasted for nearly two years.  Throughout that period, Miller and his counsel's conduct was abrasive, uncooperative, and ultimately fruitless.

The first major controversy began in February 2015, when Miller's counsel unilaterally set depositions of Priscilla Daly and Lawrence Mack.  Miller set the depositions without the agreement of counsel, and he set them in locations which were hundreds of miles away from their respective residences.  Ultimately, this led to motions for protective orders,[4] which the Magistrate Judge granted[5] and the District Court affirmed.[6]  After thousands of dollars in legal fees spent over the location of depositions, Miller never took those depositions.[7]

On March 26, 2015, MTC took Miller's deposition.  Minutes into that deposition, Miller was asked directly, "what is your understanding of why you were terminated?"[8]  In response, Miller explained: "I was terminated from Walnut Grove Correctional Facility for being a black male, standing up for what was right against the illegal activities that were going on at the

---

[1] [Doc. 1].
[2] "Fifth Circuit has shown a distaste for complaints such as these that are essentially a 'shotgun approach to pleadings… where the pleader heedlessly throws a little bit of everything into his complaint in the hopes that something will stick.'"  *Ward* v. *Life Investors Ins. Co. of Am.*, 383 F. Supp. 2d 882, 889 (S.D. Miss. 2005) (internal cites omitted).
[3] [Doc. 11].
[4] [Docs. 59, 60].
[5] [Doc. 74].
[6] [Doc. 96].
[7] All claims against Daly and Mack were for violations of federal law, not for Mississippi's common law claim for wrongful termination.  *See* Amended Complaint [Doc. 11] at ¶¶ 45-50, 55 ("This [*McArn* claim] cause of action is pressed *only against Defendant M & T*") (emphasis added).  Thus, this line of discovery was relevant to the federal claims, which contained attorneys' fees provisions.
[8] **Exhibit "C"** at 8:25; 9:1.

facility."[9] Miller never got more specific than that and offered no other substantive explanation for his termination than that he was a black male. He never stated that MTC treated him differently than any other employee similarly-situated, because he had no evidence of that. Instead, he pressed his claim for another two years before the entire matter was dismissed with prejudice.

In September 2015, Miller again unilaterally noticed the deposition of Christopher Epps, the now notorious former commissioner of the Department of Corrections, whose testimony in this case was marginally relevant at best. Both MTC and the individual defendants properly objected to Miller's conduct, and the parties exhaustively briefed the issue to the Court. Ultimately, the Court allowed the deposition of Epps but only under extremely narrow confines.

On October 12, 2015, Miller filed a 57-page motion to compel written discovery responses, accompanied by a 75-page good faith letter, and 14-page brief.[10] The motion sought supplemental responses on a total of 32 discovery requests. Ultimately, the Court granted Miller's motion to compel as to 10 requests, but limited the requests as MTC offered in the first place.[11] However, after all of the briefing, Plaintiff "withdrew the Motion with regard to all [22] remaining discovery requests…"[12] A distinct pattern of futile gamesmanship is evident.

On October 12, 2015, in addition to the Motion to Compel, Miller moved to continue the trial date and extend discovery.[13] Wanting to resolve this matter fully and finally, MTC opposed this Motion.[14] Miller premised his Motion and his need for a continuance on the alleged discovery "abuses" which formed the basis of the Motion to Compel which he largely abandoned

---

[9] **Exhibit "C"** at 9:2-5.
[10] [Docs. 105, 106]
[11] [Doc. 128] at ¶ 2.
[12] [Doc. 128] at ¶ 4.
[13] [Doc. 107].
[14] [Doc. 113].

at the hearing on that Motion. The Court ultimately extended the discovery deadline an additional six months.[15]

On June 24, 2016, MTC filed its Motion for Summary Judgment as to all claims.[16] The individual defendants also filed a Motion for Summary Judgment.[17] In his response to the Motions, Miller did, "not oppose the Motion for Summary Judgment brought by Defendants Doty, Daly, and Mack."[18] In addition, Miller put up a very weak defense to his federal claims, even going so far as to suggest that since he conceded summary judgment as to the individuals, the Court would retain jurisdiction on diversity grounds if the federal claims did not survive summary judgment.[19] On August 1, 2016, MTC filed its comprehensive Reply Brief in support of the Motion for Summary Judgment.[20] In reply, MTC correctly argued that Miller failed to establish a *prima facie* case for either its race or gender discrimination claims. On August 10, 2016, Miller filed a terse Motion to Strike the entire reply brief and all evidence submitted with it on the grounds that MTC had waived a number of the arguments. MTC was, thus, required to litigate the scope of its initial (and ultimately successful) summary judgment brief argued enough to support its reply brief. Once again, for Miller, form triumphed over substance.

The parties filed and litigated pretrial motions until the pretrial conference, which was held on February 7, 2017. After nearly three years of litigation, the Court granted summary judgment on all remaining claims against MTC, including the claims under 42 U.S.C. § 1981 and Title VII. In its Memorandum Opinion, the Court held that, "Plaintiff cannot establish a prima facie case of gender discrimination because he cannot show that similarly situated individuals

---

[15] [Doc. 127].
[16] [Doc. 135].
[17] [Doc. 137].
[18] [Doc. 144] at pp. 8-9.
[19] [Doc. 144] at pp. 18-19.
[20] [Doc. 146].

outside his protected class were treated differently, nor were any individuals in 'nearly identical' circumstances."[21] The Court held the same for Miller's race discrimination claim.[22] The Court also granted MTC's motion with respect to the *McArn* claim. A final judgment was entered on March 23, 2017.[23] Showing his thoughtful reflection of the issues, Miller filed a Notice of Appeal of the decision just over 30 minutes after the final judgment was entered.[24]

This Motion is timely because it is being submitted within 14 days of entry of final judgment. Fed. R. Civ. P. 54(d)(2)(B). Concurrently filed with this Motion is a submission to the Clerk of MTC's Bill of Costs which total $3,901.50. Although Miller filed his Notice of Appeal, this Court maintains jurisdiction on the issue of attorneys' fees. *See*, *e.g. Creations Unlimited, Inc.* v. *McCain*, 112 F.3d 814 (5th Cir. Miss. 1997) ("A district court has jurisdiction to rule on a motion for ancillary attorneys' fees even after the filing of a notice of appeal with respect to the underlying claims.") Once the Court determines whether or not to award MTC its attorneys' fees, MTC will submit to the Court an itemization of the fees it contends are appropriately awarded, along with the required proof necessary for the Court to determine the lodestar factors.

## LEGAL STANDARD

### a. Legal standard under Title VII.

Under Title VII, a "court, in its discretion, may allow the prevailing party…a reasonable attorney's fee (including expert fees) as part of the costs..." 42 U.S.C. § 2000e-5(k). Although prevailing plaintiffs are "presumptively entitled to reasonable attorney's fees," federal courts have "set a more rigorous standard for awarding attorney's fees to prevailing defendants." *Dean*

---

[21] [Doc. 173] at p. 6.
[22] [Doc. 173] at p. 8.
[23] [Doc. 174].
[24] [Doc. 175]. The Court handed down its Memorandum Opinion granting summary judgment on March 23, 2017 at 8:53 a.m. It entered final judgment at 8:56 a.m. Miller filed his Notice of Appeal at 9:31 a.m.

v. *Riser*, 240 F.3d 505, 508 (5th Cir. 2001).  The district court may only award a prevailing defendant attorney's fees in a Title VII action if: (1) the defendant was the prevailing party; and (2) the plaintiff's suit was frivolous, unreasonable, or without foundation, **or** the plaintiff continued to litigate after it became clear that her suit was frivolous, unreasonable, or without foundation.  *Christiansburg Garment Co.* v. *E.E.O.C.*, 434 U.S. 412, 422 (1978).

Relevant factors in determining when a suit was frivolous or without foundation include: "(1) whether the plaintiff established a *prima facie* case; (2) whether the defendant offered to settle; and (3) whether the district court dismissed the case or held a full-blown trial."  *United States* v. *Mississippi*, 921 F.2d 604, 609 (5th Cir. 1991).  Yet the factors used to determine frivolity "are neither rigid nor dispositive."  *Crunk ex rel. Kenneth P.* v. *San Antonio Indep. Sch. Dist.*, 2004 U.S. Dist. LEXIS 21555, 2004 WL 2397573 at *3 (W.D. Tex. Sep. 8, 2004).  The Fifth Circuit has further instructed that "a bad faith finding is not required for an award of attorney's fees" to a prevailing defendant.  *In re E.E.O.C.*, 207 Fed. App'x. 426, 433 (5th Cir. 2006).  The decision to award attorneys' fees to a prevailing defendant is within the discretion of the district court.  *Myers* v. *City of West Monroe*, 211 F.3d 289, 292 (5th Cir. 2000).

When considering whether to award fees to a prevailing defendant, the district court must exercise caution to avoid the possible "chilling effect" the award creates. *See Vaughner* v. *Pulito*, 804 F.2d 873, 878 (5th Cir. 1986).  The test for a prevailing defendant to obtain attorneys' fees is purposefully more stringent, and "is intended to ensure that plaintiffs with uncertain but arguably meritorious claims are not altogether deterred from initiating litigation by the threat of incurring onerous legal fees should their claims fail."  *Myers*, 211 F.3d at 292 (quoting *Aller* v. *New York Bd. of Elections*, 586 F. Supp. 603, 605 (S.D.N.Y. 1984)).

b.     **Legal standard under 28 U.S.C. § 1927.**

The Court has the power to sanction any attorney practicing before it under certain circumstances:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Section 1927 is essentially penal in nature, and any award otherwise justified should be limited to only those "excess costs" incurred as a result of the attorney's unreasonable and vexatious conduct. *Browning* v. *Kramer*, 931 F.2d 340, 344 (5th Cir. 1991). Counsel may be held liable for excessive costs under Section 1927 only upon a showing of bad faith, recklessness, or improper motive, and only if the multiplication of the proceedings is both unreasonable and vexatious. *F.D.I.C.* v. *Conner*, 20 F.3d 1376, 1384-85 (5th Cir. 1994). "[I]t is clear from the statutory language and the case law that for purposes of § 1927, bad faith turns not on the attorney's subjective intent, but on the attorney's objective conduct." *Amlong & Amlong, P.A.* v. *Denny's, Inc.*, 457 F.3d 1180, 1190 (11th Cir. 2006).

## ARGUMENT

I.     **Miller's positions in this litigation, both procedurally and substantively, were without foundation.**

The Court rejected Miller's positions throughout this litigation, both substantively and procedurally. Ultimately, the Court held that Miller failed to create a genuine issue of material fact as to his *prima facie* case of discrimination in his federal claims, demonstrating a total lack of foundation for the litigation. In addition, the Court roundly rejected Miller's asinine discovery positions after forcing MTC to expend vast resources to rebut the claims. For those reasons,

MTC is entitled to an award of the reasonable attorneys' fees expended in defending the federal claims in this matter, including those expended in defending Miller's discovery tactics.

      **a.    Miller failed to establish a question of fact in his *prima facie* case for the federal claims and largely conceded those claims in his summary judgment briefing.**

In August 2016, more than two years after filing the lawsuit, Miller conceded that he had no claims against any of the individual defendants, and he largely conceded his federal claims against MTC. Of course, to fully concede those claims would be an admission of their frivolity. Nevertheless, the Court properly recognized that Miller had insufficient evidence to go forward on his claims, granting summary judgment as to each of them.

As noted above, one of the factors the Court must consider in determining whether or not to award attorneys' fees to the prevailing defendant is whether or not the Plaintiff demonstrated a *prima facie* case. *Myers* v. *City of W. Monroe*, 211 F.3d 289, 292 (5th Cir. 2000). The plaintiff's failure to establish the *prima facie* case on any of his claims supports a finding of frivolousness. *Id*. The Court determined that Miller did not, and that factor favors MTC. The Fifth Circuit has noted that, "'it is relatively easy both for a plaintiff to establish a prima facie case and for a defendant to articulate legitimate, nondiscriminatory reasons for his decision, most disparate treatment cases are resolved at the third stage of the inquiry, on the issue of whether the defendant's reasons are pretextual.'" *Amburgey* v. *Corhart Refractories Corp.*, 936 F.2d 805, 811 (5th Cir. 1991) (internal cites omitted). The Court held that Miller did not even establish the very minimum requirements to prevail in his federal claims. He could not demonstrate that MTC hired a female, so his gender discrimination failed.[25] Nor could he demonstrate in his race

---

[25] [Doc. 173] at p. 6.

discrimination claim that a similarly-situated individual outside of his race was treated differently by MTC.[26]

Plaintiffs suing under Title VII must exhaust their administrative remedies before filing a civil lawsuit. *Castro* v. *Tex. Dep't of Criminal Justice*, 541 F. App'x 374, 379 (5th Cir. 2013) (citing *McClain* v. *Lefkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008)). To satisfy this requirement, private sector employees must file an administrative charge with the EEOC. *McClain*, 519 F.3d at 273. The permissible scope of a complaint under Title VII is limited to the scope of the EEOC investigation reasonably expected to grow out of the charge. *Roberts* v. *U.S. Postmaster General*, 947 F. Supp. 282, 285 (E.D. Tex. 1996) (citing *Sanchez* v. *Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). The exhaustion requirement is not a *pro forma* exercise as the first step into federal court; rather, it is meant to flesh out any claims and allow early resolution of the dispute without the costs attendant to civil litigation. *See Butts* v. *City of New York Dep't of Hous. Preservation & Dev.,* 990 F.2d 1397, 1401-02 (2d Cir. 1993). On June 21, 2013, Miller filed his Charge of Discrimination with the EEOC.[27] He never alleged any race discrimination in that charge. Instead, he only alleged gender discrimination and retaliation.

On July 17, 2013, MTC filed its response to Miller's charge, where it provided a concise position statement on the reasons why Miller was terminated, supporting documentation, and it explicitly noted that Miller could not make out a *prima facie* case of discrimination.[28] Thus, *before* the lawsuit was filed, Miller had actual notice that he had no hope of success. The Court need not engage in a *post hoc* analysis of the situation; the facts and arguments set forth in

---

[26] [Doc. 173] at p. 8.
[27] **Exhibit "A."**
[28] A true and correct copy of MTC's response is attached and incorporated as **Exhibit "B."** *See* **Exhibit "B"** at § IV(A).

MTC's position statement are the exact facts borne out after years and hundreds of thousands of dollars in legal fees.

During his deposition in March 2015, Miller was asked on numerous occasions why he believed that MTC terminated him. His response never substantively varied from some version of, "I was terminated from Walnut Grove Correctional Facility for being a black male, standing up for what's right against the illegal activities that were going on at the facility."[29] Miller's delusions of discrimination are painstakingly borne out in this exchange at his deposition:

> Q: "I want to know in your words why you believe that MTC discriminated against you and how they did it based on your race."
>
> A: "I was a black male working at the institution. There were other employees there who were not discriminated against – who were not discriminated against for race or sex, who were stealing time, weren't discriminated against. There were illegal activities going on at the facility. The Warden Doty, Warden Daly, and Warden Mack knew there were illegal activities going on at the facility. There was no conspiracy brought up against other employees."
>
> Q: "Okay. And what is Doty's race?"
>
> A: "…White Caucasian female."
>
> Q: "And Daly?"
>
> A: "White Caucasian female."
>
> Q: "And Mack?"
>
> A: "A black African-American."
>
> Q: "And you believe that he was part of discriminating against you based on race?"
>
> A: "Warden Doty, Warden Daly, and Warden Mack were all involved in conspiracy."[30]

---

[29] **Exhibit "C"** at 9:2-5.
[30] **Exhibit "C"** at 77:20-25; 78:1-19.

When asked what being a black male had to do with his termination, Miller responded: "There was illegal activity that was going on. They knew it. There was illegal activity going on at the facility. They knew it. I was in the way. They wanted to get rid of me because I was standing up for that illegal activity, was not going to be a part of that. I was opposing that."[31] Miller never provided any other details or facts to support his race claim. Miller's testimony about his gender claim was just as vague and unsubstantiated. Indeed, he testified that the same factors applying to his race discrimination claim applied to his gender discrimination claim.[32]

By the latest, Miller should have known by March 26, 2015 that he had no proof of any discrimination by MTC. If he could not understand that his claims were baseless himself, Miller's attorneys had an ethical duty to communicate that fact to him. Instead, Miller and his counsel continued to press his groundless claim through summary judgment briefing, up to the eve of trial.

### b.  Miller's actions in prosecuting this lawsuit were dilatory, expensive, and largely unsuccessful.

As noted above, Miller failed to create a triable fact issue as to any of his three claims against MTC (and he voluntarily dismissed all claims against the individual defendants). The docket in this matter is littered with pedantic procedural claims by Miller, which did nothing to advance his cause, and which unnecessarily expanded and prolonged this litigation. These include: his unnecessary fights over the location of depositions, which he never actually took; fights over discovery responses which evaporated before a hearing; and seeking continuances based upon his own dilatory conduct. Miller took positions which were contrary to law, and he refused to abandon his claims even when presented with evidence that those claims were without basis in fact. This litigation dragged on for far longer than it would have or should have based

---

[31] **Exhibit "C"** at 79:10-15.
[32] **Exhibit "C"** at 103:9-12.

solely upon the conduct of Miller and his attorneys. These facts support an award of attorneys' fees against Miller and/or his counsel.

### c. Awarding attorneys' fees in this matter would not have a chilling effect on future litigation.

One of the factors for the Court to consider in whether or not to grant a prevailing defendant's attorneys' fees is whether the grant would have a chilling effect on future litigation. *Myers*, 211 F.3d at 292. It would not. After nearly three years of litigation and tens of thousands of dollars in discovery costs and fees, Miller had no evidence of violations of his federally-protected rights that he did not have when he filed this lawsuit. Awarding attorneys' fees in this instance would not unnecessarily chill future claims under Title VII, but it would serve to prevent claims without any basis in fact or law. Miller had no evidence that his termination was based upon race, gender, or retaliation before he filed the suit, and he has none now.

### II. Miller's counsel should bear the cost of all vexatious proceedings under the provisions of 28 U.S.C. § 1927.

As outlined above, Miller presented no evidence in support of his claims that he did not know at the beginning of the case. Thus, the years of discovery was fruitless, expensive, and in vain. However, recognizing the legal standard for a claim against opposing counsel under § 1927, MTC would specifically point to the following instances where Miller's counsel needlessly and vexatiously multiplied the proceedings and prolonged the litigation:

- Plaintiff's counsel unilaterally noticed depositions of out-of-state defendant-deponents at a location of his choosing, which was not in conformity with the Federal Rules of Civil Procedure. Counsel refused to agree to take the depositions at a location convenient for the individual defendants who resided hundreds of miles from where Plaintiff noticed the deposition. Plaintiff's counsel opposed the Defendants' Motion for Protective Order and, when Judge Anderson granted the motion, they filed an objection to it with the District Court. After the District Court overruled the objection, Plaintiff's counsel ***never*** attempted to take the depositions.[33]

---

[33] *See generally* [Docs. 59, 60, 74, 96].

- In April 2015, Miller sought a continuance of the discovery deadline and trial setting in order to complete discovery. MTC consented to the continuance and the parties submitted a joint order. The discovery deadline was first extended until November 23, 2015. Between the order granting the continuance in February 2015, Miller only took one deposition. Although Miller filed numerous pleadings relating to the depositions of Daly and Mack, he never noticed or took those depositions. On May 13, 2015 (months after the original continuance was granted), Miller propounded additional written discovery on MTC, to which MTC responded timely on June 15, 2015. Thus, Miller had in his possession all of MTC's discovery responses from June. However, Miller waited until October 12, 2015 to file a motion to compel supplemental responses. He also moved for a continuance of the trial date and discovery deadline, which was ultimately granted. Miller's dilatory actions prolonged this litigation for more than a year.[34]

- Miller filed a Motion to Compel on October 12, 2015, seeking supplemental responses to 32 discovery requests. After the parties had briefed the matters fully, the Court set a hearing on the motion. At the beginning of the hearing, Miller's counsel announced to the Court that he was dropping 22 of the 32 requests for supplementation.[35]

- After MTC filed its Reply Brief in support of its summary judgment motion, which correctly pointed out that Miller failed to come forward with his *prima facie* case or to establish a genuine issue of material fact as to any element of his claims, Miller's counsel engaged in more childish pedantry by filing a motion to strike the reply. This Motion was baseless and unsuccessful.[36]

Miller's counsel should be held personally liable for these positions because they objectively demonstrate a lack of good faith in the conduct of litigation and each of these facts unnecessarily multiplied the proceedings and subsequent docket entries in this case.

Taken as a whole, these actions demonstrate a pattern of emphasizing form over substance. Nothing shows the unimportance of Miller's stances more than the fact that Miller abandoned seeking this discovery after the Court ruled against him. If litigation were a game – to be won at all cost – the means might justify the ends. It is not, and every officer of the Court has a duty not to unnecessarily expand the proceedings. Miller's counsel knew or should have known that Miller had no basis in fact for his ultimate claims; instead of dismissing the case, they doubled down and instigated needless fight after needless fight over trivial matters. While

---

[34] [Doc. 127].
[35] [Docs. 101, 105].
[36] [Docs. 147, 148, 150].

those matters were trivial, they forced MTC to incur significant expense in defending against them.

### III. Once the Court has determined whether or not to award attorneys' fees in this matter, MTC will present evidence sufficient to determine the amount and to support the award.

Under the provisions of Fed. R. Civ. P. 54(d), motions for attorneys' fees must be submitted within 14 days of entry of the judgment. The award of fees is discretionary, and MTC must prove entitlement to those fees before they are actually awarded. This is not a case of contractual attorneys' fees, where the only question involved is the amount of fees.

The "most useful starting point" in calculating attorneys' fees is the "lodestar" calculation. *Creecy* v. *Metro. Prop. & Cas. Ins. Co.*, 548 F. Supp. 2d 279, 283 (E.D. La. 2008) (quoting *Hensley* v. *Eckerhart*, 103 S.Ct. 1933 (1983)). The lodestar calculates "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id*. After calculating the lodestar, the court may make adjustments in accordance with the *Johnson* factors, but the "lodestar should be modified only in exceptional cases."[37] *Creecy*, 548 F. Supp. 2d at 284 (citing *Watkins* v. *Fordice,* 7 F.3d 453 (5th Cir. 1993)).

This case has been ongoing for nearly three years. To date, MTC has expended nearly a quarter-million dollars in defending this matter. MTC recognizes that it is not entitled to all of its attorneys' fees in this matter. If the Court should grant its request under § 706(k) of the Civil Rights Act, it would only be entitled to those fees obtained in defending the federal claims. If

---

[37] "The twelve *Johnson* factors are: (1) the time and labor required, (2) the novelty and difficulty of the issues, (3) the skill required to perform the legal services properly, (4) the preclusion of other employment, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Strong* v. *BellSouth Telecommunications, Inc.*, 137 F.3d 844, 848–50 n.4 (5th Cir. 1998).

the Court determines that MTC is entitled to fees under 28 U.S.C. § 1927, it would only be entitled to those fees which were caused by the vexatious proceeding. MTC submits that this would be a fact-intensive question, which would require review and redaction of nearly 2,000 separate time entries and the introduction of expert testimony as to the reasonableness of the attorneys' fees request. To avoid incurring further expense, MTC believes it more practicable to determine whether or not it is entitled to the fees, a question entirely separate and apart from the reasonableness of the fees and the matters associated with them.

## CONCLUSION

MTC recognizes that an award of attorneys' fees to a prevailing defendant is not appropriate in every case. Indeed, it should be the exception and not the rule. However, the particular circumstances of this case demonstrate that a departure from the norm is in order. Miller knew before he filed suit that he had no hope of succeeding. He and his counsel filed the suit and engaged in a vast waste of both the parties' and the Court's judicial resources. At the end of the day, Miller failed to make out a simple, *prima facie* case of discrimination, and the facts learned in discovery were identical to the facts presented in MTC's response to his charge of discrimination. The totality of the circumstances in this case support an award of attorneys' fees to MTC, who prevailed on summary judgment as to all claims.

**THIS** the 6th day of April, 2017.

       Respectfully submitted,

       **MANAGEMENT & TRAINING CORPORATION**

By: <u>s/ H. Richard Davis, Jr.</u>
   R. Jarrad Garner (MSB# 99584)
   Lindsey O. Watson (MSB# 103329)
   H. Richard Davis, Jr. (MSB# 103983)
   Adams and Reese, LLP
   1018 Highland Colony Parkway, Suite 800
   Ridgeland, Mississippi 39157
   Office: (601) 353-3234
   Fax: (601) 355-9708
   jarrad.garner@arlaw.com
   lindsey.watson@ arlaw.com
   richard.davis@arlaw.com

## **CERTIFICATE OF SERVICE**

I, H. Richard Davis, Jr., one of the attorneys for the Defendant Management & Training Corporation, do hereby certify that I have, this day, filed the foregoing with the Clerk of Court via the CM/ECF system, which has caused a true and correct copy to be served by electronic mail on all counsel of record.

**SO CERTIFIED**, this the 6th day of April, 2017.

s/ H. Richard Davis, Jr.  
H. Richard Davis, Jr.