**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | |
|---|---|
| JAMES RUSSELL MILLER,    )<br>    *Plaintiff*    )<br>                                )<br>vs.                             )<br>                                )<br>MANAGEMENT & TRAINING    )<br>CORPORATION, *et al.*,    )<br>    *Defendants*    ) | **Civil Action No. 3:14-cv-000427-HTW-LRA** |

**REPLY BRIEF SUPPORTING MTC'S MOTION TO STRIKE**

**COMES NOW** Management & Training Corporation ("MTC"), through counsel and pursuant to the Federal Rules of Civil Procedure, and files this Reply Brief Supporting its Motion to Strike the Plaintiff's Response to MTC's Fee Itemization [Doc. 210, 211], and would show in support the following:

**<u>INTRODUCTION</u>**

The Court should strike James Miller's unsubstantiated response and the declaration supporting it because those documents consist of nothing more than unprofessional slander of defense counsel and speculative, unhelpful expert testimony.  In response, Miller's counsel again make pointed barbs at defense counsel and again fail to acknowledge their client or his role in the litigation.  MTC's counsel has done nothing in this litigation that would warrant the relief Miller and his attorneys now seek, and they have submitted everything the Court needs to determine the amount of fees it will award.  But Miller's defamatory allegations are in the public record, available to anyone with a PACER account.  The Court should issue an order striking the documents from the record and granting MTC's application for attorneys' fees.

**I.     There was no deadline to file the motion to strike, so it cannot be untimely.**

**a.     MTC never moved to strike a "pleading" under Fed. R. Civ. P. 12(f), so the deadline under Rule 12(f)(2) is inapplicable.**

Miller argues that the Motion to Strike should be denied because it was not filed within 21 days of the Plaintiff's response. This argument is incorrect because MTC was not moving to strike a "pleading," and Rule 12(f) has no application here. Under the Federal Rules of Civil Procedure, "[o]nly these *pleadings* are allowed: (1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." Fed. R. Civ. P. 7(a). Rule 7(b) specifically treats "motions" differently than a "pleading." Under Rule 12(f), "[t]he court may strike *from a pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

MTC's motion to strike is not – as it could not be – based upon Rule 12(f) but is instead based upon the Court's, "inherent power to manage its own docket to achieve the just and efficient disposition of cases." *In re Stone*, 986 F.2d 898, 903 (5th Cir. 1993). This inherent power includes the power to strike improper motions. *See, e.g., Ready Transp., Inc.* v. *AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010); *Settlement Capital Corp. Inc.* v. *Pagan*, 2009 U.S. Dist. LEXIS 3048, 2009 WL 111563, at *3-*4 (N.D. Tex. Jan. 16, 2009); *Centillium CommUns, Inc.* v. *Atl. Mut. Ins. Co.*, 2008 U.S. Dist. LEXIS 20719, 2008 WL 728639, at *6 (N.D. Cal. Mar. 17, 2008); *Zep, Inc.* v. *Midwest Motor Supply Co.*, 726 F. Supp. 2d 818, 822-23 (S.D. Ohio 2010). "The federal courts are vested with inherent power to manage their own affairs so as to achieve the orderly and expeditious disposition of cases, including the power of the court to control its docket." *United States* v. *Colomb*, 419 F.3d 292, 299 (5th Cir. 2005) (internal brackets and quotation marks omitted). A court, exercising this inherent power, may strike an

improperly filed document. *See, e.g., Powell* v. *Dallas Morning News L.P.*, 776 F. Supp. 2d 240, 246 (N.D. Tex. 2011) ("Pursuant to the Court's inherent power to control its docket and prevent undue delay, Defendants['] Motion to Strike is GRANTED.") (Internal citations omitted). "This authority should be invoked only in extreme cases, however, and it must be used with great restraint." *Goldman* v. *Hartford Life and Acc. Ins. Co.*, 417 F. Supp. 2d 788, 793 (E.D. La. 2006) (citing *Toon* v. *Wackenhut Corr. Corp.*, 250 F.3d 950, 952-52 (5th Cir. 2001)).

> **b.     The standards applicable to striking portions of a "pleading" do not apply to this case, where Miller and his counsel have accused opposing counsel of perpetrating a fraud on the Court.**

Miller relies almost exclusively on an illusory holding in *United States* v. *Coney*, 689 F.3d 365 (5th Cir. 2012) to argue that MTC's motion to strike was untimely. *Coney* never even touched on the timing requirements of a motion to strike under the Court's inherent powers. Instead, its only holding on the motion to strike – in passing only – was that the District Court did not abuse its discretion in denying the motion. *Id.* at 380. *Coney* is inapposite. Miller goes on to note, correctly, that a motion to strike should not be granted just because the material merely offends the opposing party. But Miller accused members of this Court's bar of perpetrating a fraud on the Court. That false accusation is not merely offensive; it is scandalous, irresponsibly made, and a transparent attempt to avoid the consequences of Miller's counsel's conduct in this litigation.

This is an extreme case. Miller and his counsel accused MTC's counsel in a wholly irresponsible fashion of perpetrating a fraud on this Court. And they did so with the thinnest veneer of "evidence" to support their accusations. Unlike Miller's counsel – one of whom resides in Water Valley, another is a fulltime Ph.D. student in Tuscaloosa, Alabama, and the other is admitted to this Court *pro hac vice* – MTC's counsel reside in the Southern District of

Mississippi and regularly practice before this Court. Moreover, these allegations were filed in a public record, available to anyone with a PACER account. The allegations are completely false and are completely defamatory. They should not be allowed to remain in the public record at all. Because Rule 12(f) does not apply to this motion, the Motion to Strike was not untimely.

**II.      Miller's response to MTC's itemization of fees does not demonstrate any malfeasance on the part of MTC's defense counsel.**

Despite his arguments, Miller did not prove that MTC's counsel perpetrated any sort of billing fraud. Fraud of any species has to be shown by clear and convincing evidence; it is never presumed. *See, e.g. Carter* v. *Campbell*, 264 F.2d 930, 936 (5th Cir. 1959) ("Fraud implies bad faith, intentional wrongdoing and a sinister motive. It is never imputed or presumed and the courts should not sustain findings of fraud upon circumstances which at most create only suspicion.") (Cleaned up). This logic underlies the enhanced pleading requirements for allegations of fraud. *See* Fed. R. Civ. P. 9(g). "Indeed, there is a presumption against fraud, the Mississippi Court stating that it is 'not a thing to be lightly charged and most emphatically not a thing to be lightly established.'" *Grenada Ready-Mix Concrete, Inc.* v. *Watkins*, 453 F. Supp. 1298, 1309 (N.D. Miss. 1978) (internal citations omitted). "This standard 'stems from the obvious concerns that general, unsubstantiated charges of fraud can do damage to a defendant's reputation.'" *Shushany* v. *Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir. 1993).

Miller wants to vitiate a request for more than a quarter of a million dollars that MTC spent defending claims that were baseless from the time of filing and for proceedings that his counsel unnecessarily multiplied on many occasions. His argument for doing so is that MTC submitted fraudulent billing records for six depositions. His "proof" of fraud, which he claims to be "indisputable," is the deposition transcripts. Based upon the start and finish times listed on those transcripts, Miller creates his "proof" that MTC is perpetrating a fraud on the Court.

MTC's counsel has already denied inflating the time on the deposition transcripts, noting that there are a number of activities that could plausibly lead to any discrepancy between the times stated on the transcripts and what the attorneys billed for, including meeting with witnesses or co-counsel before or immediately after the depositions, travel time, or final minute preparations. Maybe after a long day and hard deposition, it was more convenient to simply enter the time as participating in the deposition. Regardless, none of MTC's attorneys inflated the bills in this or any other case, and Miller has absolutely no proof that they did.

In the *DePriest* litigation, Judge Reeves entered an opinion granting the Plaintiffs in that case attorneys' fees and noted some discrepancy in billing records. The Court raised the issue of what appeared to be a 6.6 hour meeting that might not have even occurred though the Plaintiffs sought reimbursement from the Court on the issue. *See Depriest* v. *Walnut Grove Corr. Auth.*, No. 3:10-CV-00663-CWR-FKB, 2017 U.S. Dist. LEXIS 154884, *16 (S.D. Miss. Sept. 22, 2017). There Judge Reeves noted:

> These inconsistencies may be insignificant errors that do not constitute a lack of billing judgment. Indeed, Plaintiffs have exercised substantial billing judgment elsewhere in this case. See, e.g., Docket No. 206-3 at 7 (reducing claimed hours in response to Defendants' objections). The inconsistencies, however, reflect some inattentiveness which undermines the foundation of Plaintiffs' overall fee request. Their award, therefore, must be adjusted accordingly.

*Id.* He correctly held that, "these inconsistencies do not justify limiting Plaintiffs to no relief at all, as Defendants advocate." *Id.* at *16-*17.[1] *See also, A C Marine, Inc.* v. *Axxis Drilling Inc.*, No. 10-0087, 2011 U.S. Dist. LEXIS 45100, 2011 WL 1595438, at *4 (W.D. La. Apr. 25, 2011) ("The remedy for failure to submit bills containing complete detail is not preclusion, but, rather, reduction of the fees and costs claimed."). Though Miller submitted a conclusory declaration

---

[1] Given Miller's reliance upon *DePriest* throughout this troubled litigation, it is ironic that there are now more docket entries in this case than *DePriest* (this will make the 220th docket entry in this case, and there are currently 219 in *DePriest*). And in that case, Judge Reeves found an award of $496,859.25 in fees to be a reasonable award. Here MTC is seeking roughly half that amount.

from one of his own attorneys that the amount of fees on almost every task was excessive, given the amount of motion practice that this case has generated – almost exclusively due to Plaintiff and his counsel's tactics and on which MTC has overwhelmingly prevailed – the amount of fees submitted by MTC were reasonable.  At worst, the Court's remedy in this case would be to simply reduce the amounts that the Court determines to be excessive.

One final point bears repeating.  Miller's counsel have conducted themselves in this way throughout this case.  They make brash, terse arguments devoid of any substantive analysis, and they have conducted this litigation as if it were a game.  But lawsuits are not games; they are deadly serious enterprises, and though a lawyer must zealously advocate for his client, that zealousness must yield to the requirements not to unnecessarily multiply the proceedings. Miller's response to the Motion to Strike is simply more of the same.  Miller continues to make bold, unsubstantiated accusations against MTC's counsel that should be stricken from the public record.

### III. John Gillis's declaration – the foundation of Miller's response to MTC's itemization of fees – is wholly improper and should be stricken from the record.

#### a. Gillis's declaration is not based upon his personal knowledge.

As noted throughout the motion to strike, John Gillis has no personal knowledge about the matters set forth in his declaration.  Gillis and Miller go to lengths to note that Richard Davis is unqualified to offer a business records affidavit because of his position at Adams and Reese. But Gillis has no personal knowledge about any of the policies or hierarchy of Adams and Reese. He also opines on the amounts of time spent on various tasks.  If he had personal knowledge that any of the fees were improperly inflated because he personally witnessed each and every timekeeper on each and every tine entry, his declaration would have some force.  He most certainly did not, and his declaration is improper.

### b. Gillis's "expert" opinions are entirely unhelpful.

And Gillis's declaration is largely opinion testimony that is unhelpful to this Court in deciding the amount of fees to award. This Court has served honorably as a federal judge for decades and has no need of Gillis's opinions about what constitutes a "minimally competent lawyer" or how much time a particular task should have taken. "It is the Court's duty to determine whether the fees [MTC] requests are reasonable, and the Court can do so without relying on expert testimony." *Kiva Kitchen & Bath, Inc.* v. *Capital Distrib.*, 681 F. Supp. 2d 807, 813 (S.D. Tex. 2010) (citing *Davis* v. *Bd. of Sch. Comm'rs of Mobile County*, 526 F.2d 865, 868 (5th Cir. 1976).

## IV. Miller's remaining issues have no merit.

### a. Miller's commentary on the Davis declaration is incorrect.

In response to the Motion to Strike, Miller's sole basis for disregarding the Davis declaration is that he is unqualified to serve as a records custodian, because "Gillis' [sic] declaration makes its quite clear that Davis is not a proper records custodian." As noted above, Gillis has no basis to determine who is qualified to serve as a custodian of records. Indeed, the Federal Rules of Evidence supply that qualification, and Davis offered sworn testimony that he met those qualifications.

The district court has broad discretion in ascertaining whether a proper foundation has been laid for admitting business records. *United States* v. *Patterson*, 644 F.2d 890, 900-01 (1st Cir. 1981); *Rosenberg* v. *Collins*, 624 F.2d 659, 665 (5th Cir. 1980). To be admissible under Rule 803(6), the documents must: (1) be kept pursuant to some routine procedure designed to assure their accuracy; (2) be created for motives that would tend to assure accuracy (preparation for litigation, for example, is not such a motive); and (3) must not themselves be mere

accumulations of hearsay or uninformed opinion.  *Rosenberg*, 624 F.2d at 665 (quoting *United States* v. *Fendley*, 522 F.2d 181, 184 (5th Cir. 1975)).

Any person in a position to attest to the authenticity of the records is competent to lay the foundation for admissibility.  *Wilson* v. *Zapata Off-Shore Company*, 939 F.2d 260, 272 (5th Cir. 1991).  This person does not have to be the preparer of the record and he does not have to personally attest to the accuracy of the information contained in the records. *Id.* (citing *Rosenberg*, 624 F.2d at 665).  Davis is an attorney and timekeeper at Adams and Reese.  He is certainly competent to testify as to each of the foundational elements of F.R.E. 803(6) such that they speak for themselves.

Gillis's declaration – and Miller's response – miss the point entirely.  As noted above, Davis was not testifying that he had personal knowledge that the timekeepers actually performed the task or the amount of time it took each for each time entry; the authenticated and properly founded business records say that.

The remaining arguments for discrediting the Davis declaration are likewise unavailing. Miller argues that there is no evidence in the record of rates in the region.  This too is plainly false.  Davis testified in his declarations that the rates charged in this case were comparable to or lower than those in the metro Jackson area.  As he noted in the declaration, Davis has practiced law for nearly 7 years, and is certainly competent to testify as to the rates in the metro Jackson area.  Furthermore, Miller supplied no evidence such as declarations to rebut the reasonableness of MTC's rates. *See Islamic Ctr. of Miss., Inc.* v. *City of Starkville, Miss.*, 876 F.2d 465, 469 (5th Cir. 1989), overruled on other grounds by *Shipes* v. *Trinity Indus.*, 987 F.2d 311 (5th Cir. 1993); *Washington* v. *Philadelphia Cty. Ct. of Common Pleas*, 89 F.3d 1031, 1036 (3d Cir. 1996) (court

may not reduce hourly rates when plaintiffs provide evidence supporting reasonableness but opposing party fails to contradict).

### b. There is no binding requirement for cutting travel expenses.

The Fifth Circuit has recognized the lack of consensus among federal courts regarding the billing of travel time, *In re Babcock & Wilcox Co.,* 526 F.3d 824, 827-29 (5th Cir. 2008), and no Fifth Circuit authority *requires* reducing hourly rates for travel. While some Mississippi courts have awarded only 50% of fees for travel time, others award full fees for travel time. *Compare Smith* v. *Walthall Cty., Miss.*, 157 F.R.D. 388, 393 (S.D. Miss. 1994) *with Penthouse Owners Ass'n, Inc.* v. *Certain Underwriters at Lloyd's, London*, No. 1:07–CV–568–HSO–RHW, 2011 U.S. Dist. LEXIS 147331, at *13, *19-*33 (S.D. Miss. Dec. 21, 2011). The time spent traveling was time that MTC's counsel could have billed to another client but was precluded from so doing because of the travel time. There is no justification here for cutting the travel time.

### c. Miller's response to MTC's itemization was just another attempt to seek relief previously denied twice by this Court.

Notably absent from Miller's response was any mention of James Miller or his role in this litigation. Nowhere did Miller's counsel attempt to shield Miller from any liability in this case or provide any meaningful analysis about any reductions that should be made. Instead, in response Miller argues for the third time to the Court that MTC is not entitled to any fees, despite the Court's prior rulings against him on this issue and in spite of the competent evidence of those fees. Instead, Miller and his counsel did as they have done throughout this case. They took a "bet the house" position based upon a false assumption, harming themselves, their client, and MTC's counsel.

### d. The motion to strike was not filed for an improper purpose, and any attempt to raise Rule 11 in response fails.

Finally, Miller attempts to raise a procedurally deficient Rule 11 motion for MTC's filing the motion to strike. To begin, any motion must be brought separately. *See* Fed. R. Civ. P. 7(b) ("A request for a court order must be made by motion.") That requirement is further reflected in the Local Uniform Civil Rules: "Any written communication with the court that is intended to be an application for relief or other action by the court must be presented by a motion in the form prescribed by this Rule." L.U. Civ. R. 7(b). But that requirement is made more explicit regarding Rule 11 motions: "A motion for sanctions ***must be made separately from any other motion*** and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2) (emphasis added). Finally, any motion seeking relief under Rule 11,

> must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.

*Id.* In all respects, any allegations that MTC violated Rule 11 is improperly – and once again, irresponsibly – raised in this response.

To the merits of Miller's charge: the motion to strike was never filed to unreasonably multiply the proceedings. To suggest otherwise is illogical. MTC has every interest in expediting this litigation since the sole remaining point of controversy is how much in attorneys' fees it is owed, and who is responsible for paying them. The point of MTC's Motion to Strike was to remove from the record the improper "evidence" submitted by Miller and the outrageous accusations of criminal and fraudulent behavior leveled against officers of the Court.

## CONCLUSION

The Court has twice granted MTC's entitlement to attorneys' fees in this case. The only remaining questions are the amount of that award and who will have to pay it. MTC properly submitted everything the Court needs to determine that amount. And neither MTC nor its counsel offered perjured testimony or fraudulent information. Instead of attempting to reduce the amount that might be awarded, or reduce the amount that might be awarded against their client, Miller's counsel slandered the attorneys at Adams and Reese. MTC has full confidence that the Court will see through these transparent tactics. But it also requests an order striking from the public record the baseless and scandalous charges Miller and his counsel leveled throughout their response. Those attacks are beneath responsible members of the bar and have no place in the public record. Accordingly, MTC requests an order striking the Plaintiff's response to its itemization, the declaration supporting it, and all other documents making the unfounded charges of fraud. Those documents are docket entries 210, 211, 213, 214, 217, 218, 219, and 220.

Dated: July 10, 2018.                    Respectfully submitted,

**MANAGEMENT & TRAINING CORPORATION**

By:   *s/ H. Richard Davis, Jr.*
      R. Jarrad Garner (MSB# 99584)
      Lindsey O. Watson (MSB# 103329)
      H. Richard Davis, Jr. (MSB# 103983)
      Adams and Reese, LLP
      1018 Highland Colony Parkway, Suite 800
      Ridgeland, Mississippi 39157
      Office: (601) 353-3234
      Fax:    (601) 355-9708
      jarrad.garner@arlaw.com
      lindsey.watson@ arlaw.com
      richard.davis@arlaw.com

## **CERTIFICATE OF SERVICE**

  I, H. Richard Davis, Jr., one of the attorneys for the Defendant Management & Training Corporation, do hereby certify that I have, this day, filed the foregoing with the Clerk of Court via the CM/ECF system, which has caused a true and correct copy to be served by electronic mail on all counsel of record.

  Dated: July 10, 2018.

             *s/ H. Richard Davis, Jr.*
             H. Richard Davis, Jr.