UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**JAMES RUSSELL MILLER,**
**Plaintiff**

v.                                    Cause No: 3:14-cv-00427-HTW-LRA

**MANAGEMENT AND TRAINING**
**CORPORATION,**
**Defendant**

---

**PLAINTIFF'S BRIEF IN SUPPORT OF HIS MOTION SEEKING
SANCTIONS UNDER RULE 11(b)**

---

Defendant's reply brief in the fee application proceeding is 90% recycled from the Defendant's brief supporting their motion to strike the Plaintiff's response in the fee application proceeding. This motion is brought not because Garner recycled text from a prior filing in this case. This motion is brought because Garner's recycling demonstrates that the prior filing was submitted for an improper purpose. Instead of seeking actual relief (to which they aren't entitled anyway), the *prior* filing was intended to "back-door" a reply brief on MTC's fee application into the record when it was not clear that the Court would permit it. In addition, by doing the very light editing that he did, Garner demonstrated that the prior filing was intended to harass opposing counsel.

**Procedural/Factual Background**

On June 21, 2018, while an opposed motion for an extension of time to file a reply brief was pending, MTC filed a motion to strike Plaintiff's opposition to their

1

fee application. Doc. 216. On November 29, 2018, the Court denied the motion for extension of time as moot, but granted MTC leave to file a reply within three days. Doc. 222. On December 3, 2018, MTC filed their reply brief in support of their fee application.[1] Doc. 223.

In reading the reply brief, plaintiff's counsel was struck by an odd feeling of déjà vu. Many of MTC's counsel's phrases were distinctive, and yet sounded familiar. This prompted plaintiff's counsel to perform a side-by-side analysis of the motion to strike and the reply brief. Finding pages upon pages of identical text, plaintiff's counsel then converted both documents to plain text and used Microsoft Word's Compare function to see exactly what Garner had done to generate this particular work product.

The results were frankly stunning, and are attached as Exhibit A to this brief. To decode the document, note that additions and deletions are marked in red, deletions being struck through and additions being clear text. Moved text is marked in green; struck through for its old location and clear text for its new. Text that appears in the same place in both documents is printed in black. So Exhibit A shows exactly how much work Garner did in preparing the reply brief.

Garner generated 41 new words of text between the motion to strike and the reply brief. Ex. A, p. 7. These words are contained in Footnote 6 and are nothing but

---

[1] The procedural posture of this case has gotten confusing. The motion for leave to file sought leave to file a reply brief in the *contested motion for extension of time*. Doc. 214. This is further demonstrated by the proposed reply MTC submitted. Doc. 214-1. By granting *that* motion, the Court reached beyond MTC's requested relief when it granted them time to file the substantive reply. Miller does not challenge that ruling, as it's consistent with the Court's broad equitable docket-management power.

a gratuitous insult against Gillis' writing style. They literally serve no purpose in the argument, and Garner never connects this to any argument he makes. It's like he just found a neat little fact that he thinks makes Gillis look bad and so he feels the need to share it. He also added a few words here and there where he changed the requested form of relief. Other than that, no text was added to Davis' motion to strike.

Garner deleted several paragraphs of particularly overheated invective from the motion to strike, including any argument that the Plaintiff's response to the fee application was scandalous and any argument that Gillis lacked personal knowledge to testify regarding the billing. He also deleted procedural language related to changing the filing from a motion to strike to the reply brief. In short, he went through and eliminated everything that was *only* relevant in a motion to strike. However, he did not generate a new internal document number, which further demonstrates MTC's use of the motion to strike for its reply brief.

Left in the reply brief were Davis' dark accusations that Miller's counsel had breached their fiduciary duties to him. Ex. A, p. 2 ("Indeed, their conduct suggests that Mr. Miller does not yet realize that the Sword of Damocles hangs over his head."). This statement is literally a demand that Miller waive attorney-client privilege to satisfy Davis' (and now Garner's) desires to peek into the communications between Miller and his counsel.

Upon the filing of the motion to strike, Plaintiff's counsel served Garner and Davis with a Rule 11 motion on June 29, 2018, as required by Rule 11(c). Ex. B –

Letter from John Gillis to Garner and Davis. More than 21 days has elapsed since that service, MTC's counsel has not withdrawn their improperly filed motion to strike, and Garner has confirmed Plaintiff's belief by recycling the motion to strike as his reply brief. Hence, Plaintiff files the instant motion.

## Law and Argument

### I.   *Legal Standard*

Rule 11(b) states in relevant part, "[b]y presenting to the court . . . a pleading, written motion, or other paper, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, it is not being presented for any improper purpose." Fed. R. Civ. P. 11(b). In determining whether a paper was presented for an improper purpose, the subjective intent of the attorney is irrelevant; "the standard under which an attorney is measured is an objective, not subjective, standard of reasonableness under the circumstances." *Childs v. State Farm Mut. Auto Ins. Co.*, 29 F.3d 1018, 1024 (5th Cir. 1994). Regardless of whether the arguments presented are frivolous and unwarranted, if it is objectively ascertainable that they are presented for an improper purpose, they violate an attorney's duties under Rule 11(b)(1). *Whitehead v. Food Max of Mississippi, Inc.*, 332 F.3d 796, 805 (5th Cir. 2003) (*en banc*). Filing excessive motions can constitute harassment under Rule 11. *Sheets v. Yamaha Motor Corp.*, 891 F.2d 533, 538 (5th Cir. 1990). Using abusive language toward opposing counsel could also violate the rule. *Coats v. Pierre*, 890

F.2d 728, 734 (5th Cir. 1990). In all cases, the question is whether the improper purpose is objectively ascertainable. *Whitehead*, 332 F.3d at 805.

> II.  *The motion to strike was filed to get MTC's arguments in reply into the record.*

Garner's reply-brief filing reveals the true purpose of the motion to strike. Concerned that the Court might not permit them to file a reply brief supporting their fee application, they sought some way to insert those arguments into the record where they could not do so via a reply brief. This was not an unreasonable fear, given that the law of the case in this matter was that the Court would not permit out-of-time filings. Doc. 188 ("Deadlines are construed strictly in the United States.") No reasonable attorney could have predicted that the Court would reverse itself and decide that out-of-time filings from the defendant were perfectly acceptable, where they were banned for the plaintiff. Doc. 222.

By adding two pages of abusive invective that claims that the plaintiff's counsel is engaged in scandalous pleadings by pointing out the inconsistency between the record and MTC's attorney's testimony, Davis and Garner hoped that their reply brief could be mistaken for a motion to strike. This is not the place to hash out in great detail the reasons why MTC's motion to strike is due to be denied; Plaintiff responded to the motion to strike in detail. Doc. 220. The question before the Court now is simple: does the evidence, as shown in Exhibit A to this brief, demonstrate that Garner and Davis filed the motion to strike in order to place their reply brief into the record?

5

As Exhibit A demonstrates, literally nothing in the reply brief is new argument, as demonstrated that all nineteen pages of the reply brief's argument can also be found, word-for-word, in the motion to strike brief. From this it can be concluded that Garner and Davis were concerned that the Court would resolve their fee application without giving them the final word, since they had failed to meet the Court's deadlines. Thus, they sought a way to put those arguments into the record. This means that the motion to strike was excessive, in that it was not filed to present arguments to strike, but rather to respond to Plaintiff's arguments related to MTC's fee application.

This is the second motion to strike that has been filed in this matter. It may be helpful to compare them. The first motion to strike was filed by the Plaintiff, who sought to remove from the record new evidence and arguments offered by the Defendant improperly in a reply brief. Doc. 147. Notably, the Plaintiff's brief in support of that motion addresses *none* of the merits of the evidence and argument – Plaintiff conceded that the record on that motion was closed. Doc. 147. In fact, Defendants argued in response that Plaintiff should seek to reopen the record instead of striking their argument, and conceded at the hearing on the motion to strike that the *evidence* they had offered was properly stricken from the record. Doc. 149. Because the Court did not rely on any of the evidence or argument offered in MTC's reply brief, it denied the motion to strike as moot. Doc. 173.

In contrast, in the proceedings in question here, out of 19 pages in the combined document, approximately 2 of them were filed in the motion to strike. Ex.

6

A. If 90% of your motion to strike can be recycled word-for-word as your reply brief for a fee application, then something has gone seriously wrong with your analysis of the issues before the Court. Either you have introduced a lot of argument that is irrelevant to the motion to strike, or you have completely misanalysed the issues with the fee application. In this case, since the arguments Garner offers in the fee application are actually relevant to the fee application, they cannot be relevant to a motion to strike, which means they are offered for an improper purpose.

In *Zaldivar v. City of Los Angeles*, the Ninth Circuit held that presenting a claim that had been previously rejected constituted harassment under Rule 11. 780 F.2d 823, 832 (9th Cir. 1986). "Without question, successive complaints based upon propositions of law previously rejected may constitute harassment under Rule 11." *Id.* The Fifth Circuit has adopted this rule as demonstrating that "the filing of excessive motions, even if each is 'well grounded,' may under some circumstances constitute 'harassment sanctionable under the Rule." *Nat'l Ass'n of Government Employees v. Nat'l Fed. of Federal Employees*, 844 F.2d 216, 224 (5th Cir. 1988); *see also Sheets v. Yamaha Corp.*, 891 F.2d at 538.

In addition, the recycling of memoranda of law for different motions has been held to constitute harassment under Rule 11 as objective evidence of excessive motions. *William Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 611 F. Supp. 281, 285 (S.D.N.Y. 1985). In reversing the award of sanctions in that case, the Second Circuit held, "Although we share the district court's disdain for defendants' use of a recycled memorandum of law on their motion to dismiss the

7

fourth amended complaint, the timing of defendants' motions were dictated by the local rules and the district court's order dismissing the third amended complaint." *William Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 143 (2d Cir. 1991). In this case, no local rule dictated that MTC's lawyers file a motion to strike. There was no order from the Court relative to any of the timing issues in this case. The *only* reason for MTC to file the motion to strike with the recycled reply brief was because they were worried they wouldn't get their reply brief into the record.

      III.    *Davis and Garner's abusive language is also harassment.*

In reviewing the similarities between Davis' motion to strike brief and Garner's reply brief, the language Garner chose to delete is telling. Davis argued in two different places that Plaintiff's response to their fee application is a "stain on [Davis and Garner's] reputations as officers of the court." Ex. A., p. 2; *see also* p. 16. Davis went so far as to claim that Plaintiff's response to the fee application was "bile," Ex. A., p.2. Both Davis and Garner claim that Plaintiff's response was offered "without a scintilla of evidence," Ex. A, p. 1. Both Davis and Garner assert with no evidence that Plaintiff's counsel has breached their fiduciary duties to Plaintiff, Ex. A. p. 2. Nor could they obtain any evidence for that assertion, as the communications between Plaintiff and his counsel are protected by attorney-client privilege. Both Davis and Garner go so far as to claim that Plaintiff's response to the fee application constitutes libel *per se*. Ex. A, p. 2; 18. This despite the fact that every fact asserted in Plaintiff's response cites to admissible evidence submitted

with the response. Doc. 211. Indeed, Plaintiff's counsel took care to ensure that the response was well-grounded in the evidence, because they were aware of the gravity of their argument. In addition, Plaintiff's counsel took care to ensure that the response to the fee application avoided invective, name-calling, and unfounded accusations of bad faith. Instead, the response focuses on the inferences that can be drawn from the evidence. To the extent that the response besmirches the reputations of Davis and Garner, the evidence of their conduct is what besmirches it, not any "bile" offered by Plaintiff's counsel, which doesn't exist anyway.

"Abusive language toward opposing counsel has no place in documents filed with our courts; the filing of a document containing such language is one form of harassment prohibited by Rule 11." *Coats v. Pierre,* 890 F.2d 728, 734 (5th Cir. 1989). Accusations that attorneys are ill-serving their client may constitute abusive language. Where a plaintiff's attorney filed documents asserting that opposing counsel "has a history of running up large fees, and refusing settlement even when it was in Defendant's best interest. . . . Defense counsel may tend to ill-advise Defendant of its true interest in settling," the Western District of Texas granted a motion for sanctions. *Redd v. Fisher Controls,* 147 F.R.D. 128, 132 (W.D. Tex. 1993). In finding the language sanctionable, the district court held that "to reputable lawyers . . . the statements . . . may be equally offensive and damaging [as those found sanctionable in *Coats v. Pierre*]." *Redd,* 147 F.R.D. at 133. Similarly, in the Western District of Louisiana, filing briefs that characterized the other side's argument as "absurd" and "infantile" led the district court to enter an order

regarding civility, specifically threatening sanctions if the conduct continued. *PHI, Inc. v. Office & Professional Employees International Union*, 2007 WL 4291957, at *6-7 (W.D. La. Dec. 4, 2007).

While Davis and Garner did not rise to the level of vituperative rhetoric that the Fifth Circuit found sanctionable in *Coats*,[2] the assertion of a breach of fiduciary duty, the characterization of Plaintiff's well-founded arguments as "bile," and the description of Plaintiff's submission as libel *per se*, suggests that their rhetoric easily falls within the scope of what other district courts have found sanctionable. It is telling that unlike Plaintiff, who cited to admissible evidence for each and every fact asserted, Davis and Garner can cite to no place in the Plaintiff's response that reaches over the line into improper invective.

IV.     Conclusion

While Plaintiff's counsel believes that to the extent that Garner recycles the improper abusive language Davis used, it is also harassing, we do not believe that the recycled arguments are offered *by Garner* for an improper purpose. However erroneous they may be, Garner's fee-application reply brief reflect the issues actually before the Court in the fee application. Davis' motion-to-strike brief offers 17 pages of argument that is *only* relevant to the merits of the fee application, not to any purported motion to strike.

Plaintiff does not seek sanctions relative to Garner's reply brief. While Garner's language does meet the standard for harassment, Plaintiff has incurred no

---

[2] Plaintiff's counsel declines to quote the sanctionable language here. Suffice it to say that it was racist, sexist, and accused opposing counsel of immoral and illegal behavior, and did so using particularly offensive rhetoric.

10

costs relative to the reply brief. Plaintiff has not been forced to respond to a motion that raises a host of irrelevant issues, as he did in the motion to strike. Since Garner simply repeats Davis' insults, any harm they did to Plaintiff's counsel has already been done in Davis' brief. Since Garner's brief is responsive to the issues before the Court in the fee application, Plaintiff does not assert that it was filed for an improper purpose in that proceeding.

In addition, to the extent that sanctions are appropriate for Garner's filing, Plaintiff would argue that awarding no attorney's fees in this matter would constitute a sufficient sanction. Since Plaintiff has already argued extensively that MTC's fee application is fatally flawed and justifies no fees, any sanction against Garner would be double-dipping. Plaintiff is not seeking a windfall, merely justice.

Davis is another matter. Plaintiff's counsel incurred significant time and energy responding to the unnecessary motion to strike. The insults Davis inserted into the record were vicious and intended to inflict emotional distress. Without belaboring the record, this is not the first time that Plaintiff's counsel has read a paper filed by Davis and marveled at the viciousness of his rhetoric. In short, Davis' conduct presents a case where Rule 11's purpose of "deterrence, punishment, and compensation" would be served. *See Willy v. Coastal Corp.*, 915 F.2d 965, 968 (5th Cir. 1990); *see also Thomas v. Capital Security Serv., Inc.*, 836 F.2d 866, 879 (5th Cir. 1988) (*en banc*).

An appropriate sanction would be to impose against Davis a sanction equal to Plaintiff's counsel's reasonable attorney's fees and costs relative to the motion to

11

strike and this Rule 11 motion. Because Davis is no longer employed at the firm representing MTC,[3] the question arises whether the sanction against Davis should be assessed against Adams & Reese. Plaintiff has not found any cases addressing this question, but notes that at the time of the filing in question, Davis had seven years' experience in the practice of law, and had been on this case for nearly two years. *See Smith v. Our Lady of the Lake Hosp., Inc.*, 135 F.R.D. 139, 155 (M.D. La. 1991) (fashioning a non-monetary, educational sanction against an attorney who was a recent graduate and had not participated in the case for the entire time, and assessing monetary sanctions against the other lawyers), *rev'd on other grounds* 960 F.2d 439 (5th Cir. 1992). While noting that "individual lawyers, not law firms, are admitted to conduct cases in this court," *FDIC v. Day*, 148 F.R.D. 160, 188 (N.D. Tex. 1993), *rev'd sub nom. FDIC v. Calhoun*, 34 F.3d 1291 (5th Cir. 1994), Plaintiff would suggest that Adams & Reese's attorneys had the responsibility to withdraw any improper filings after Davis left the firm.[4]

---

[3] The Court may take judicial notice of the fact that Davis' affiliation in the Mississippi Bar's Lawyer Directory is now the Mississippi State Personnel Board, and that he is no longer listed on Adams & Reese's website. *See* Mississippi Bar Lawyer Directory, available at https://www.msbar.org/lawyer-directory/ (last accessed December 26, 2018); *see also* Adams and Reese, available at https://www.arlaw.com/ (last accessed December 26, 2018).

[4] Plaintiff notes that despite not being with the firm representing MTC in this matter anymore, Davis has not filed a motion to withdraw as counsel. No doubt this is an innocent oversight, and Plaintiff would not object to such a motion, provided that Davis remained subject to the Court's jurisdiction for the purposes of sanctions.

Respectfully submitted,

WALLACE, MARTIN, DUKE & RUSSELL, PLLC
Attorneys at Law
1st Floor, Centre Place
212 Center Street
Little Rock, Arkansas 72201
(501) 375-5545
Attorney for Plaintiff

By:       */s/ James Monroe Scurlock*
James Monroe Scurlock, TN BPR No. 032192
jms@WallaceLawFirm.com

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been served on this, the 28th of December 2018, via email and Doc. upon counsel for the Defendants.

Richard Jarrad Garner
Lindsey O. Watson
H. Richard Davis, Jr.
Daryl A. Wilson
ADAMS AND REESE, LLP
1018 Highland Colony Parkway
Suite 800
Ridgeland, Mississippi 39157
(601) 353-3234
(601) 355-9708 FAX
E-Mail: Jarrad.Garner@arlaw.com
E-Mail: Lindsey.Oswalt@arlaw.com
E-Mail: Richard.Davis@arlaw.com
E-Mail: Darryl.Wilson@arlaw.com

*/s/ James Monroe Scurlock*
James Monroe Scurlock, TN BPR No. 032192
jms@WallaceLawFirm.com