**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**JAMES RUSSELL MILLER**                                               **PLAINTIFF**


**VS**                                    **CIVIL ACTION NO.: 3:14-cv-427-HTW-LRA**


**MANAGEMENT & TRAINING CORPORATION**                          **DEFENDANT**


## ORDER  ON ATTORNEYS' FEE APPLICATION

Before this Court is an Application for Attorney's Fees **[doc. no. 205],** filed on May 7,

2018, by the Defendant Management & Training Corporation (hereafter "MTC"). The

application is opposed by the Plaintiff, James Russell Miller, in general , and as to specific items.

### I.  Introduction

Plaintiff brought this employment discrimination lawsuit against MTC on May 28, 2014,

under the auspices of Title VII of  the Civil Rights Act of 1964 (42 U.S.C. 2000e et seq.),[1] 42

---

[1] Title VII of the Civil Rights Act of 1964, as amended, is codified at 42 U.S.C. §2000e et seq.  It
provides in pertinent part:
(a) Employer practices: It shall be an unlawful employment practice for an employer--
   (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any
individual with respect to his compensation, terms, conditions, or privileges of employment, because of
such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his
employees or applicants for employment in any way which would deprive or tend to deprive any
individual of employment opportunities or otherwise adversely affect his status as an employee, because
of such individual's race, color, religion, sex, or national origin.
Title 42 U.S.C. § 2000e(a).

U.S.C. § 1981,[2] alleging deprivation of rights; and 42 U.S.C. §1985,[3] alleging conspiracy to deprive plaintiff of his civil rights.  Plaintiff also urged a supplemental claim under Mississippi state law for wrongful discharge and retaliatory discharge.

After several years of contentious and mostly unnecessary litigation, this court granted summary judgment to Defendant MTC, against all of Plaintiff's claims.  Because of the frivolous nature of the lawsuit and the unreasonable and vexatious multiplication of the proceedings by Plaintiff's attorneys, this court also granted Defendant MTC's Motion for Attorneys' Fees.  MTC subsequently submitted its Application for Attorneys' Fees which included an itemization of the fees it contended were appropriate, together with a supporting memorandum.  Plaintiff Miller thereafter submitted his Objections to the Fee Application, and Defendant filed its Reply.  It is now the task of this Court to examine all of the submissions in light of the relevant law, and determine the proper amount of attorneys' fees to be granted to the Defendant.

## II. Factual and Procedural Background

Plaintiff herein, James Russell Miller, an African American male, is a former employee of MTC.  MTC is a private, for-profit corporation, that operated a Correctional Facility located in Walnut Grove, Mississippi.  Plaintiff had worked his way up from a position as a correctional officer with MTC's predecessor company, to Chief of Security for MTC at the Walnut Grove facility.

---

[2] 42 U.S.C. § 1981: (a) Statement of equal rights: All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

[3] 42 U.S.C. § 1985 creates a private cause of action for individuals to sue private actors, as opposed to state actors (who may be sued under 42 U.S.C. § 1983), for conspiracies to deprive the complainants of their civil rights. *See Griffin v. Breckenridge*, 403 U.S. 88, 104-105 (1971).

None of this would be of any consequence to this court had matters proceeded routinely along at the Walnut Grove facility for Miller and his employer; but, of course, they did not. MTC terminated Miller on June 7, 2013, after MTC had determined that Miller had engaged in inappropriate sexual conduct with a subordinate female employee.  Although Miller denied the accusation, the female employee admitted to the inappropriate conduct. [doc. no. 136 at p.2]. Miller still protested his innocence, challenging the veracity of the subordinate female employee, as well as MTC's motive for crediting her word over his.  MTC replaced Miller as Chief of Security with a white male.

Aggrieved by his termination, Miller filed with the United States Equal Employment Opportunity Commission ("EEOC"),[4] a charge of discrimination, which is a pre-requisite to filing a lawsuit under Title VII.  Miller contended that he had been the victim of discrimination based on his sex, male.  He made no mention in his EEOC charge of discrimination based on his race. Without providing a substantive ruling on Miller's charge, the EEOC provided Miller a "right to sue letter"[5] which informed him of his right to file suit in federal court within ninety (90) days.  Miller did just that, filing the Complaint commencing this lawsuit on May 28, 2014.

In his lawsuit, Miller contended that the accusation of inappropriate sexual conduct had

---

[4] Before bringing a lawsuit based on discrimination under Title VII, a complainant must first file a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged unlawful employment practice. 42 U.S.C. s 2000e-5(e); *McClain v. Lufkin Indus., Inc*., 519 F.3d 264, 273 (5th Cir. 2008). *Pinkard v. Pullman-Standard, A Div. of Pullman, Inc*., 678 F.2d 1211 (5th Cir. 1982*); Price v. Sw. Bell Tel. Co.,* 687 F.2d 74, 77 (5th Cir. 1982)

[5] A "right to sue letter" is a letter issued by the United States Equal Employment Opportunity Commission.  It may be issued  at the request of a claimant who does not wish the EEOC to proceed further with their case, or it is issued once the EEOC has completed its investigatory and/or conciliatory activities, and informs the claimant that the Department of Justice will not file a lawsuit on their behalf; and that the claimant has ninety days from receipt of the right to sue letter to file his/her own lawsuit. Receipt of the Right to Sue letter is a prerequisite to filing a lawsuit based on a charge of discrimination under Title VII.  See Snider v. L-3 Commc'ns Vertex Aerospace, LLC, No. 3:09-CV-704-HTW-LRA, 2016 WL 3648281, at *3 (S.D. Miss. Mar. 15, 2016).

not been the true reason for his termination.  The true reasons, said Miller, were: 1) his constant complaints about staffing decisions violative of the consent decree in *DePriest v. Walnut Grove Corr  Authority*, No. 3:10-CV-00663 CWR-FKB 2015 WL 3795020 (S.D. Miss. Mar. 26, 2012), "illegal acts"; and 2) racial and gender discrimination perpetrated by MTC against him.

In that initial Complaint, Miller waged a plethora of legal claims against MTC and several of its employees. All of the Defendants filed a Motion to Dismiss in which they cited authority to show that many of the claims were not legally valid *on their face*.  These claims were:  1) the Title VII race claim against all defendants; 2) the Title VII race, sex, and retaliation claims against the individual defendants; 3) the § 1981 claim against the individual defendants; 4) the § 1985 conspiracy claim against all defendants; and 5) the retaliatory discharge claim against the individual defendants based on *McArn v. Allied Bruce-Terminix Co*., 626 So. 2d 603, 876 (Miss. 1993). [6] [doc. no. 8 p.5].  Apparently conceding the invalidity of some of these claims, Miller did not respond to the motion to dismiss these claims, choosing instead to file an *Amended* Complaint which omitted many of the superfluous claims he had initially filed.

Miller's *First Amended Complaint* [7][doc. no. 11] again targeted MTC and alleged the following causes of action: 1) racial discrimination and deprivation of constitutional rights under

---

[6] Generally, under Mississippi law there is no tort claim for wrongful discharge from employment.  The Mississippi Supreme Court case of *McArn v. Allied Bruce-Terminix* created two exceptions.  If an employee is fired: 1) for refusing to participate in an illegal activity, or 2) for reporting the employers' illegal activity, he is entitled to bring a suit for wrongful discharge. *McArn v. Allied Bruce-Terminix Co*., 626 So. 2d 603, 876 (Miss. 1993).

[7] Rule 15 of the Federal Rules of Civil Procedure provides as follows:
(1) A party may amend its pleading once as a matter of course within:
   (A) 21 days after serving it, or
   (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15 (a)(1).
    Plaintiff here amended his pleading within twenty-one days of the motion to dismiss under Rule 12(b) and before the Answer was served.

42 U.S.C. §1981; 2) race and gender discrimination and retaliation under Title VII; and 3) wrongful termination and retaliation under the laws of the State of Mississippi, pursuant to *McArn v. Allied Bruce-Terminix Co.*, 626 So. 2d 603, 876 (Miss. 1993). As to the latter, Miller contended, in his pleadings, that he had made frequent complaints to MTC officials that the facility was in violation of certain staffing policies of the institution, as well as the laws of the State of Mississippi.[8] This, according to Miller, together with the alleged discrimination based on race and gender, resulted in his firing, and constitutes a wrongful discharge under the laws of the State of Mississippi based on *McArn*. *Plaintiff's First Amended Complaint* [doc. no. 11 at ¶6].

In addition to naming MTC in his Amended Complaint, Miller named as defendants Lawrence Mack (hereafter "Mack"), who was the Warden of the facility, and two female Deputy Wardens, Patricia Doty (hereafter "Doty") and Priscilla Daly (hereafter "Daly"). Miller accused Mack, Doty and Daly of conspiring to have him fired, which, he contended, constituted a conspiracy to deprive him of his civil rights under Title 42 U.S.C. § 1985.

MTC filed its Answer to the Amended Complaint on September 23, 2014 [doc. no. 11]. The Answer asserted several affirmative defenses that should have placed Plaintiff on notice, once again, that any causes of action brought under Title VII necessitated the exhaustion of administrative remedies through the EEOC. MTC claimed that Plaintiff had not properly exhausted administrative remedies as required by Title VII, and thus his claims should be barred.

---

[8] The Walnut Grove facility was subject to a Consent Decree that mandated the ratio of staff to prisoners that the facility was required to maintain. *Depriest v. Walnut Grove Corr. Auth.,* No. 3:10-CV-00663 CWR-FKB 2015 WL 3795020 (S.D. Miss. Mar. 26, 2012) [doc. no. 80-5 at p. 14]. It was Miller's opinion, according to his pleadings, that the facility consistently failed to meet the numerical requirements for staffing that were established in the Consent Decree. *Plaintiff's First Amended Complaint* [doc. no. 11 at ¶¶ 7-8].

Further, pled the defendants, Plaintiff's claims brought pursuant to Title VII were limited by the scope of Plaintiff's EEOC charge of discrimination.

The proceedings that transpired over the next few years consisted of, *inter alia*, contentious motions and hearings, manipulated continuances, and needless discovery battles. The litigation was marred by gamesmanship and frivolous filings by Plaintiff's attorneys and caustic language.[9]  The substance (or lack thereof) of these proceedings will be discussed later in this opinion.

On June 24, 2016, Defendant MTC filed its Motion for Summary Judgment as to all remaining claims.[10]  [doc. no. 135].  At the time this court was considering MTC's Motion for Summary Judgment, Plaintiff's claims against MTC had been narrowed to the following: gender discrimination in violation of Title VII (42 U.S.C. § 2000e et seq.);[11] race discrimination in

---

[9]  The rancor became more prevalent as the litigation progressed. Toward the end of the proceedings, each party accused the other of pursuing frivolous matters,  untruthfulness and unprofessional conduct. See e.g.,  [doc. no. 216] and [doc. no.229] .

The language of Plaintiff's' briefs often degenerated into childish verbiage or personal references. "It's like he just found a neat little fact that he thinks makes Gillis look bad and so he feels the need to share it." [doc. no. 229 p. 3]   It was not uncommon for Plaintiff's counsel to make personal references about opposing counsel in their briefs, such as the following. "[T]his is not the first time that Plaintiff's counsel has read a paper filed by Davis and marveled at the viciousness of his rhetoric." [doc. no. 229 p. 11]. Plaintiff's lawyers clearly provided the lion's share of vitriolic language and their legal memoranda often possessed an acerbic tone; however, Defense counsel has not been completely without fault.

Most disturbingly, Plaintiff  makes accusations against MTC of fraud, perjury and of  manufacturing evidence regarding their documentation of fees. [doc. no. 228].  After this court granted MTC's motion for attorneys' fees, Plaintiff's lawyers proclaimed fraud at every briefing opportunity in reference to each billing entry with which they had some disagreement or challenge, legitimate or not.

[10] In addition to the claims discussed in this Opinion, MTC sought summary judgment on Miller's claim for "gender retaliation" under Title VII.  Plaintiff did not oppose dismissal of this claim.  In his brief in opposition to the summary judgment motion, Plaintiff stated:  "As Miller has never made such a claim, Plaintiff does not oppose this section of MTC's Motion for Summary Judgment." [doc. no. 144 at p.2].

[11]42 U.S.C. § 2000e:(a) Employer practices: It shall be an unlawful employment practice for an employer-

   (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any

violation of 42 U.S.C. §1981,[12] and wrongful termination under the laws of the State of

Mississippi, based on *McArn v. Allied Bruce-Terminix Co*., 626 So. 2d 603, 876 (Miss. 1993).

The individual defendants ( Mack, Doty and Daly) also filed their separate combined

Motion for Summary Judgment on June 24, 2016 [doc. no. 137].  Plaintiff did not oppose their

Motion, stating in his Response brief the following. "The Individual Defendants have moved for

summary judgment on Miller's 42 U.S.C. § 1985 claim.  Based on discovery developed thus far

in the litigation, Plaintiff does not oppose this Motion." [doc. no.  143 at ¶4].

Plaintiff apparently recognized that he had insufficient evidence, based on discovery, to

hold these defendants in this lawsuit. In this court's view, Miller's claims against these

individual defendants were so lacking in substance that Plaintiff's counsel would have been hard

pressed to even manufacture an argument against summary judgment. It is to Plaintiff's and his

lawyers' credit that they did not further pursue these claims, but to their discredit that they

pressed these matters so needlessly and so vigorously for as long as they did.  This court entered

an Agreed Order on December 2, 2016, dismissing all of the individual Defendants [doc. no.

153], leaving Miller's former employer, MTC, as the sole Defendant.

On March 23, 2017, this court granted MTC's June 24, 2016, Motion for Summary

Judgment as to all issues, dismissing Miller's Complaint with prejudice. [doc. no. 173].

Defendant MTC then, prevailed on all claims.

Miller appealed that dismissal and judgment granting MTC's summary judgment motion.

The appellate body, the United States Court of Appeals for the Fifth Circuit, affirmed this district

---

individual of employment opportunities or otherwise adversely affect his status as an employee, because
of such individual's race, color, religion, sex, or national origin.

[12] Unlike the prerequisites for pursuing a cause of action under Title VII, a party does not have to exhaust
administrative remedies by filing a complaint with the EEOC in order to pursue a claim under 42 U.S.C. §
1981.

court's decision in a one- paragraph decision. [13]

On April 6, 2017, while the appeal of the summary judgment was still pending,[14] MTC filed its Motion for Award of Attorneys' fees [doc. no. 177] against Miller and his attorneys, James Monroe Scurlock and Matthew Reid Krell.[15]

In that motion MTC argued that it was entitled to an award of attorneys' fees on two grounds: a) as the prevailing party under Title VII and 42 U.S.C. §§1981; and b) as a sanction against Plaintiff's counsel in accordance with Title 28 U.S.C. § 1927.[16]  MTC also argued that it was entitled to reimbursement of its costs in the amount of $3901.50, the amount submitted to

---

[13] The complete text of the opinion, before Judges Wiener, Dennis and Southwick, is as follows:

> Plaintiff-Appellant James Russell Miller appeals the ruling of the district court that Defendant-Appellee Management and Training Corporation is entitled to summary judgment on his claims of gender discrimination under Title VII, race discrimination under 42 U.S.C. § 1981, and wrongful termination. Miller's only claim on appeal necessitates evidence that he was fired for reporting or objecting to criminal violations of a consent decree. Miller has not challenged the district court's determination that he was fired for inappropriate sexual conduct with a subordinate coworker and that there was no evidence this reason was pretextual.
> The district court's judgment is, in all respects,
> AFFIRMED.

*Miller v. Management & Training Corp.* 697 Fed. App'x 408 (5th Cir. 2017).

[14]  In the Fifth Circuit, a district court has jurisdiction to rule on a motion for attorneys' fees after the filing of a notice of appeal on the underlying claims. *Kira, Inc. v. All Star Maint., Inc.,* 294 F. App'x 139, 141 (5th Cir. 2008) (quoting *Procter & Gamble Co. v. Amway Corp.,* 280 F.3d 519, 524–25 (5th Cir.2002) ("The district court, however, retains jurisdiction to resolve motions for sanctions and attorneys' fees while a judgment on the merits is pending on appeal."); see also *Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 817 (5th Cir. 1997).

[15] Attorney John B. Gillis also represented the Plaintiff beginning in December of 2015, approximately a year and a half after the lawsuit had been filed.  MTC says it is not seeking an award of fees against Gillis, who, it says, "neither instituted nor unreasonably prolonged this civil litigation*." Itemization Supporting MTC's Award of Attorneys' Fees* [doc. no. 205 p.2 fn. 2].  It is the province of this court, however, to determine against whom liability should ultimately lie for the various proceedings found to be frivolous or unreasonable and vexatious.

[16] Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct. Title 28 U.S.C. §1927.

the Clerk of Court as MTC's Bill of Costs.

Plaintiff's Response to the Defendant's motion for attorneys' fees was entirely non-responsive.  Miller did not address any of Defendant's claims.  He made only one argument, that the motion for attorneys' fees had been filed late, past the fourteen-day deadline [doc. no. 182].  Plaintiff wrongly believed the motion to have been filed on April 7, 2017, when it was actually filed on April 6, 2017, the date by which the motion was due.  Plaintiff made the choice not to refute any of Defendant's substantive arguments, or to discuss the merits of the motion, relying solely, and senselessly, on the "lateness" argument.

After it became apparent that Defendant's motion for attorneys' fees had been timely filed, Plaintiff filed a *Motion for Extension of Time or Leave to Amend* [doc. no. 184].  Having squandered the opportunity to address the merits of Defendant's claim of entitlement to attorneys' fees, Plaintiff belatedly sought leave to change his Response.  Plaintiff's attorneys already had filed their responsive brief; but they regretted the tact they earlier had pursued and wanted a "do over."  The motion to amend/correct was fully briefed by both sides and vigorously contested – another needless use of time and resources.  This court denied Plaintiff's motion for an extension of time, or leave to amend/correct [doc. no. 188].

This Court, upon reviewing the proceedings of this matter and the relevant jurisprudence, was persuaded to grant Defendant's Motion for Attorney's Fees [Docket No. 177]. Defendant had provided sufficient evidence of its right to attorney's fees by prevailing against Plaintiff on all claims, as well as the fees incurred by Defendant during the unnecessary litigation proceedings initiated by Plaintiff's counsel. Accordingly, the Defendant is entitled to its reasonable attorney's fees in this matter.  On January 26, 2018, this court entered its Order [doc. no. 191] granting to MTC an award of Attorneys' Fees, and directing Defendant to submit an

itemization of fees it contends are appropriate, along with the required proof necessary for the Court to determine the proper award amount, within fourteen (14) days of the Order.

### III. Legal Standard

*A. Title VII and 42 U.S.C. §1988*

Title 42 U.S.C. § 2000e-5(k) [17] provides that in a Title VII case, the court may allow the prevailing party reasonable attorneys' fees as part of the cost.  A prevailing *plaintiff* in a Title VII case is ordinarily to be awarded attorney's fees. *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 417 (1978).  A more stringent standard, though, is applied to a prevailing *defendant,* who may be awarded attorney's fees in a Title VII case only when a court finds that the plaintiff's claim was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Id.* at 421.  Only the cost of defending against the frivolous claims, however, should be assessed against the plaintiff and plaintiff's counsel.

For a case proceeding under §1981, reasonable attorneys' fees may be awarded to a prevailing party pursuant to 42 U.S.C. §1988. [18]  The same standard applies to prevailing

---

[17] 42 U.S.C. §2000e-5(k)
 (k) Attorney's fee; liability of Commission and United States for costs
In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

[18] 42 U.S.C. §1988 (b) and (c)
(b) Attorney's fees
In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, the Religious Freedom Restoration Act of 1993, the Religious Land Use and Institutionalized Persons Act of 2000, title VI of the Civil Rights Act of 1964, or section 12361 of Title 34, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs. . . .
(c) Expert fees
In awarding an attorney's fee under subsection (b) in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee.
42 U.S.C. § 1988

defendants who seek an award of attorneys' fees under 42 U.S.C. § 1988, as applies to those

seeking an award of fees under Title VII.  A court may award attorney's fees to a prevailing

*defendant* under § 1988 only if it specifically finds that plaintiff's suit was "frivolous,

unreasonable or without any foundation."  *Vaughner v. Pulito,* 804 F.2d 873, 878 (5th Cir. 1986)

(quoting  *Lopez v. Arkansas County Independent School District,* 570 F.2d 541, 545 (5th

Cir.1978).

Under either of these provisions, a plaintiff who initially had a colorable claim, but who

continues to litigate after it becomes obvious that the claim is frivolous, unreasonable, or

groundless, may also be required to pay attorneys' fees. *Christiansburg,* 434 U.S. at 422.

### B. 28 U.S.C. §1927

A grant of attorneys' fees may be awarded to a prevailing defendant as a sanction under

28 U.S.C. § 1927.  That statute provides that any attorney practicing in the federal courts who

"so multiplies the proceedings in any case unreasonably and vexatiously" may be required to pay

the excess costs, expenses, and attorneys' fees reasonably incurred because of that conduct.  28

U.S.C. §1927.  Fees may be shifted to any attorney, but not to the parties, and may only be

awarded to the extent of the excess fees caused by the unreasonable and vexatious multiplication.

To shift the entire cost of defense, the claimant must prove, by clear and convincing evidence,

that *every facet* of the litigation was patently meritless. *Nat'l Association of Government*

*Employees v. Nat'l Federation of Federal Employees*, 844 F.2d 216, 223 (5th Cir. 1988)(as

quoted in *Procter & Gamble Company v. Amway Corporation,* 280 F.3d 519, 526 (5th Cir.

2002)(emphasis in original).

Section 1927 sanctions are not to be awarded lightly. They require "evidence of bad faith,

_____

improper motive, or reckless disregard of the duty owed to the court," *Gonzalez v. Fresenius Medical Care North America*, 689 F.3d 470, 479 (5th Cir. 2012) (quoting *Edwards v. General Motors Corp.,* 153 F.3d 242, 246 (5th Cir. 1998)); *Procter & Gamble Company v. Amway Corporation,* 280 F.3d 519 (5th Cir. 2002). The court must find that the sanctioned party multiplied the proceedings *both* unreasonably *and* vexatiously. *Procter & Gamble v. Amway* at 525.

When imposing large sanctions in a complex case with an extensive record, the court must also: (1) identify sanctionable conduct and distinguish it from the reasons for deciding the case on its merits, (2) link the sanctionable conduct to the size of the sanctions, and (3) differentiate between sanctions awarded under different statutes. *Id.*, at 526; *Arnold v. Fed. Nat. Mortg. Ass'n*, 569 F. App'x 223, 224 (5th Cir. 2014) (quoting *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.,* 739 F. 3d 848, 871-72 (5th Cir. 2014).

*C. Lodestar*

When determining the appropriate amount of an attorneys' fee award, the court must engage in a two-step process as described in *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). The first step requires the district court to "determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating lawyers. The district court must then multiply the reasonable hours by the reasonable hourly rates." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir.1995). This step is what is known as the "lodestar calculation." *Id.*

The lodestar amount is presumed to be reasonable; but it can be adjusted upward or downward by the court based on certain factors, as outlined in *Johnson v. Georgia Highway Express, Inc*. 488 F.2d 714 (5th Cir.1974). Determining whether this upward or downward

adjustment should be made, based on the *Johnson* factors, is the second step in determining the appropriateness of the amount of attorneys' fees granted to the other side.

## IV. Discussion and Analysis

This court  now examines the conduct of these proceedings in light of MTC's  Fee Application and Itemization and the relevant law to determine the appropriate amount of fees to be awarded.

### A. Miller's Suit as Groundless and Frivolous
### Under Title VII and § 1988

As previously noted, a prevailing defendant may only recover fees under Title VII or §1988 if the suit is "frivolous, unreasonable or groundless, or [if] the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n, Id*., 434 U.S. 412, 422 (1978).  See also *Myers v. City of West Monroe*, 211 F.3d 290, 293 (5th Cir. 2000) (*citing Walker vb. City of Bogalusa*, 168 F.3d 237, 239 (5th Cir. 1999));  *Payne v. Univ. of S. Mississippi,* 681 F. App'x 384, 389 (5th Cir. 2017) ("we have generally affirmed awards of attorney's fees where the plaintiff's civil rights claim lacks a basis in fact or relies on an undisputedly meritless legal theory").

This court found that Miller's lawsuit was frivolous from its inception. [doc. no.173 p.12].  Relevant factors in determining when a suit is frivolous or groundless include: "(1) whether the plaintiff established a *prima facie* case; (2) whether the defendant offered to settle; and (3) whether the district court dismissed the case or held a full-blown trial." *United States* v. *Mississippi*, 921 F.2d 604, 609 (5th Cir. 1991); see also *Myers v. City of Monroe,* 168 F.3d290, 293 (5th Cir. 2000).  These factors, however, "are neither rigid nor dispositive." *Crunk ex rel. Kenneth P.* v. *San Antonio Indep. Sch. Dist.*, 2004 WL 2397573 at *3 (W.D. Tex. Sep. 8, 2004).

### i) Gender Discrimination

To establish a prima facie case of gender discrimination under Title VII, a plaintiff must show three things:  (1) he is a member of a protected class;  (2) he suffered an adverse employment action, and (3) individuals outside his protected class who were similarly situated, or in "nearly identical" circumstances, were treated differently. *Barrientos v. City of Eagle Pass, Tex*., 444 F. App'x 756, 758 (5th Cir. 2011).  Miller could show the first two elements – he was a member of a protected class, male, and termination was an adverse employment action.

What Miller could not show was that similarly situated female employees had been treated more favorably than he had under nearly identical circumstances.  Miller pointed to his accuser, Tene Wilson, who had not been fired, even though she allegedly participated in the same sexual conduct of which he was accused. Tene Wilson was a subordinate employee, however.  Miller was a high -ranking supervisor.  Therefore, they were not similarly situated; nor were they in nearly identical circumstances.

This supports a finding of frivolousness, a factor favoring MTC.  As the Fifth Circuit Court of Appeals noted in *Amburgey v. Corhart Refractories Corp.*, it is relatively easy for a plaintiff to establish a prima facie case and for a defendant to articulate legitimate, nondiscriminatory reasons for his decision. *Id*. 936 F.2d 805, 811 (5th Cir. 1991). Yet, Miller did not meet this very minimum requirement.

The second factor in determining frivolousness – whether  the defendant offered to settle -- does not assist either side in this inquiry.  An unsuccessful settlement conference was conducted with the Magistrate Judge on December 16, 2014.  This does not assist in our determination of frivolousness.

 The third factor causes this court to examine whether this case was tried to a conclusion. This district court dismissed this lawsuit on summary judgment.  Therefore, the third factor,

dismissal before trial, also points toward the conclusion that Plaintiff's federal claims were frivolous.

Even if Plaintiff had been able to establish a prima facie case of gender discrimination, he could not show that the reason given for his termination had been pretextual. The other party involved, Tene Wilson, signed a handwritten statement acknowledging the incident where she was "sexually involved with Major Miller in the office next to Intake." *Employee Incident Report* [doc. no. 135-3]. Although she waffled, at times, on the extent of the sexual involvement, Wilson never retracted her handwritten statement that sexual contact had occurred.

Additionally, Wilson provided sworn deposition testimony. Therein she again stated that the sexual liaison had occurred and acknowledged that she and Miller previously had a romantic relationship several years prior. [doc. no. 84-2]. The sexual contact, Wilson said, consisted of kissing and touching each other's buttocks. *Tene Wilson Deposition* [doc. no. 135-4, pp.4,7].

Wilson's handwritten statement and sworn deposition statement had this court to pronounce, "[a]ccordingly, Defendant had a legitimate reason for terminating Plaintiff, and Plaintiff cannot establish that Defendant's reason for his termination was a pre-text for gender discrimination." *Opinion* [doc. no. 173, p.8]. Wilson's statements bore the indicia of reliability and this court had no proof of conspiracy or malicious intent. Under a similar belief, MTC had on its side ample jurisprudence proclaiming that in employment discrimination cases, the plaintiff must first establish a *prima facie* case of discrimination (defendant had not done that here). The burden of production then would shift to the employer to provide a legitimate, non-discriminatory reason for the action. *Manning v. Chevron Chem. Co., LLC,* 332 F.3d 874, 881 (5th Cir.2003); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Defendant MTC did that (even though Miller had not established a prima facie

case); therefore, the persuasion burden shifted back to the plaintiff, who then would have been obliged to show that the defendant's proffered reason was simply a pretext for discrimination. *Manning,* 332 F.3d at 881.

To carry this burden in a discrimination case, the plaintiff would have been required to put forward evidence rebutting each of the nondiscriminatory reasons the employer articulated. *Wallace v. Methodist Hosp. System,* 271 F.3d 212, 220 (5th Cir.2001).  A plaintiff may establish pretext by showing that a discriminatory motive more likely motivated the employer's decision, such as through evidence of disparate treatment, or that the employer's explanation is unworthy of credence. *Id; Haire v. Bd. of Sup'rs of Louisiana State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 362–63 (5th Cir. 2013).

Miller could not show that similarly situated female employees had been treated more favorably than he had under nearly identical circumstances.  Even so, MTC's explanation for discharging Miller, to this court, was reasonable and worthy of credence.  An employer "is allowed to be incorrect in its assessment of the facts it relies on to justify firing [the plaintiff], but it is not allowed to have any discriminatory animus ... in making its decision." *Traylor v. S. Components, Inc.,* No. 18-CV-0775, 2019 WL 3526358, at *5 (W.D. La. Aug. 1, 2019), appeal dismissed, No. 19-30663, 2019 WL 7938068 (5th Cir. Nov. 19, 2019) (citing *Laxton v. Gap, Inc.*, 333 F.3d 572, 579 (5th Cir. 2003)).  See *also ; Sandstad v. CB Richard Ellis, Inc*., 309 F.3d 893, 899 (5th Cir. 2002).

### ii) Race Discrimination

Plaintiff insisted on prosecuting a Title VII claim against MTC for race-based discrimination, despite knowing he had not filed a claim for racial discrimination with the EEOC. *Miller EEOC Charge* [doc. no. 177-1].   It is well settled that Title VII requires

employees to exhaust administrative remedies before seeking judicial relief. *McClain v. Lufkin Indus., Inc.,* 519 F.3d 264 (5th Cir. 2008). Miller's claim for racial discrimination under Title VII had no legs from the very start, a fact that had been pointed out to Plaintiff's counsel no less than three times: 1) Defendants' Motion to Dismiss the initial Complaint, [doc. no. 8] filed August 26, 2014; 2) Defendant's Answer to the Amended Complaint [doc. no. 12] filed September 23, 2014; and 3) Defendants' Motion for Partial Judgment on the Pleadings [doc. no. 18] filed October 3, 2014. Yet, Miller and his attorneys did not dismiss this claim until November 26, 2014.[19] *Agreed Order of Dismissal of Certain Claims* [doc. no.25 p.1]. Meanwhile, a period of six months had passed when a simple reading of the above pleadings should have alerted Miller and his attorneys about this fatal flaw in their pursuit of this claim.

Miller's Amended Complaint also included a claim of race discrimination under the auspices of Title 42 U.S.C. § 1981. This did not help him, however. The United States Court of Appeals for the Fifth Circuit has emphasized that the elements of a §1981 claim that are required to be proven are identical to those of a Title VII claim. *Anderson v. Douglas & Lomason Co., Inc.*, 26 F.3d 1277, 1284 n.7 (5th Cir. 1994). Therefore, a plaintiff must establish those same three elements to establish a prima facie case of *race* discrimination under 42 U.S.C. §1981 as discussed in the previous section for Title VII. Here, Plaintiff could not show that a similarly situated individual outside his protected class had been treated differently; nor show that any individuals had been in "nearly identical" circumstances. Therefore, Miller was unable to establish a prima facie case of race discrimination under either theory.

Miller's claims of racial discrimination were so devoid of merit that he could not provide

---

[19] An agreed order was entered on November 26, 2014 [doc. no. 25]., approximately six months after commencement of the lawsuit. The order dismissed the Title VII race-based claims of all defendants, except for the §1981 race discrimination claim against MTC.

any factual specifics at his deposition.  This testimony, taken from Miller's deposition excerpts, is indicative of the kinds of statements Miller made when asked the specifics of how allegedly he had been  discriminated against.

> Q: I understand you have a race discrimination claim against MTC. So I want to know in your words why you believe MTC discriminated against you and how they did it based on your race.
> A: I was a black male working at the institution.  There were other employees there who were not discriminated against – who were not discriminated against for race or sex, who were stealing time, weren't discriminated against.
>     There were illegal activities going on at the facility.  The Warden Doty, Warden Daly, and Warden Mack knew there were illegal activities going on at the facility.  There was no conspiracy brought up against other employees.

Miller Deposition [doc. no. 135-5] p.77: 20-25.

> Q: What does it have to do with you being black? That's what I don't understand.
> A: I can't – I can't tell you that.  You're asking me to give you some insight on the reasoning why – some insight from their – I can't tell you what their mind thinks.  I can't tell you that.  That's beyond my capabilities.

Miller Deposition [doc. no. 135-5] p.82: 19-25  and p. 83:1

Miller's basic response throughout the questioning on his race claim was that he was "a black male standing up for what was right."  Miller's  Deposition [doc. no. 135-5  pp. 77 to 100]. No factual specifics were ever provided.

 This Court issued its Opinion on March 23, 2017 [doc. no. 173], granting MTC's Motion for Summary Judgment.  Plaintiff's counsel appealed the Judgment.  This court had ruled against Miller on all three issues raised in the summary judgment motion -- gender discrimination, race discrimination and wrongful discharge under state law – yet, Miller raised only the issue pertaining to his state law claim under *McArn v. Allied Bruce-Terminix Co., Inc.,* in his appeal to the Fifth Circuit.  See *McArn* 626 So.2d 603 (Miss. 1993).

Even Plaintiff recognized that his discrimination claims were so lacking in substance that he did not attempt to appeal those issues.  The Court of Appeals, on September 21, 2017,

summarily affirmed the decision of this district court. *Miller v. Management & Training Corp.* 697 Fed. App'x 408 (5th Cir. 2017) [doc. no.190]. The Petition for Rehearing was denied on October 24, 2017. [doc. no. 187].

MTC asked in its Fee Application that this award of attorneys' fees be imposed against Miller and his attorneys (Attorneys Krell and Scurlock), jointly and severally, pursuant to Title VII and § 1988. [doc. no. 206 at p.1]. Miller, himself, Defendant MTC says, knew or should have known when he filed his lawsuit, and before any discovery, that his claims were "without basis in fact or law." *Motion for Award of Attorneys' Fees* [doc. no. 177 at p.2]. In its order granting Defendant's Motion for Attorneys' Fees, this court stated that Miller's suit was frivolous from its inception. *Order,* [doc. no. 191 p.4]. In response to Miller's EEOC charge, MTC provided a detailed position statement and supporting documentation which explicitly noted that Miller could not make out a prima facie case of discrimination. Before the lawsuit was filed then, Miller was on notice that his suit would be doomed to failure.

This court agrees that Miller should have known that he had no factual basis for his lawsuit; but his lawyers should have known that he also had no legal basis for his lawsuit, an assessment that Miller, as a non-lawyer, would probably have been unable to make. Miller's lawyers, even if they initially believed the lawsuit to have merit, should have brought an end to this litigation once it became apparent there was no hope of success. This court is persuaded that the primary responsibility for pursuing these meritless claims with such unwarranted zeal and utilizing such vexatious tactics, lies with Miller's attorneys.

Although this court is persuaded that Miller and his attorneys should have known that this was a frivolous case from its inception, this court chooses to allow Plaintiff and his attorneys the benefit of the doubt. As the United States Supreme Court said in *Christiansburg Garment*

*Co. v. Equal Employment Opportunity Commission,* "[e]ven when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n,* 434 U.S. 412, 422, 98 S. Ct. 694, 700–01, 54 L. Ed. 2d 648 (1978). The Supreme Court recognized, as does this court, that litigation can be unpredictable. A plaintiff may have a weak case but expect that more favorable facts may emerge through the discovery process. The opposite is also true. A party may have a sincere belief that he/she has a valid cause of action, but facts may prove otherwise over the course of the litigation.

At the close of discovery in this case, *at the latest,* all parties involved should have known that there was no basis for recovery in this lawsuit under any theory. This court, therefore, will assess attorneys' fees under Title VII and 42 U.S.C. §1988, against the Plaintiff's two lead attorneys, together with the Plaintiff, James Russell Miller, jointly and severally, for MTC's fees reasonably incurred in defending the federal claims, from and after the close of discovery on June 13, 2016. Unquestionably, everyone knew at the conclusion of discovery that every aspect of the lawsuit was groundless.

The total fees MTC claims it earned in defending against the lawsuit for this entire period is $88,663; however, an award to a prevailing defendant under Title VII and §1988 for frivolous claims applies only to *federal* claims brought pursuant to these *federal* civil rights enactments. Since $13,713 of the fees for this period were for prosecuting the appeal on the *state* law *McArn* issue, this amount is deducted from the total amount of fees awarded. The total amount thus awarded to MTC for defending against the federal claims for this period total **$74,950** ($88,663 in total fees for the period less $13,713 for prosecuting the appeal on the *McArn* issue, which was a Mississippi state law claim, not a federal claim). *Statement of Itemization* [doc. no. 205-2

pp. 139 – 189].

This court has yet to make its determination, however as to the reasonableness of this fee amount using the lodestar methodology. The court makes this analysis later in this Opinion.

*B. Unreasonable and Vexatious Proceedings Under §1927*

Section 1927 permits awards against the attorneys, personally, in a given action.  It is meant to sanction the attorneys, not the parties.  *Browning v. Kramer,* 931 F.2d 340 (5th Cir. 1991). *Breazeale v. Smith,* 857 F.2d 258, 261 (5th Cir.1988); *Batson v. Neal Spelce Associates, Inc.,* 765 F.2d 511, 516 n. 3 (5th Cir.1985).  It provides as follows:

> An attorney admitted before any court of the United States who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Title 28 U.S.C. § 1927.

Only those attorneys' fees incurred because of the unreasonable and vexatious behavior may be awarded to the other side, and the district court must make detailed factual findings when imposing sanctions under § 1927.  *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.,* 739 F.3d 848, 871 (5th Cir. 2014) (citation omitted). Unlike sanctions under Title VII and §1998, however, an award of fees as a sanction under §1927 is available for any claims brought in federal court, including state law claims.    Although Plaintiff claims otherwise in his opposition brief [doc. no.  211 p.21], an award of fees under §1927 is available for lawsuits brought under *McArn.*  The statute itself, provides that its penalties are available in ***any*** case where the proceedings are vexatiously and unreasonably multiplied, and federal courts have consistently applied §1927 to cases based on state law claims. See e.g., *Port Elevator Brownsville v. Gutierrez,* 198 Fed.Appx. 362 (5th Cir. 2006); *Payne v. University of Southern Mississippi,* No. 1:12-CV-41-KS-MTP, 2015 WL 1482636 (S.D. Miss. Mar. 31, 2015).

This court now begins its discussion of the specific sanctionable actions of Plaintiff's attorneys under § 1927.

This court found, in its Order granting Defendant's motion for attorneys' fees, that Plaintiff's counsel had vexatiously and unreasonably prolonged the litigation in this matter.  The court's order granting the motion for attorneys' fees cited four examples that the Defendant highlighted as matters where Plaintiff's attorneys had unnecessarily multiplied the proceedings. They are as follows:

1.  Plaintiff's counsel unilaterally noticed depositions of out-of-state defendant-deponents at a location of his choosing, which was not in conformity with the Federal Rules of Civil Procedure. . . .

2.  In April 2015, Miller [and his attorneys] sought a continuance of the discovery deadline and trial setting in order to complete discovery. MTC consented to the continuance and the parties submitted a joint order. The discovery deadline was first extended until November 23, 2015.  Between the order granting the continuance in February 2015, Miller only took one deposition. . . .  On May 13, 2015 (months after the original continuance was granted), Miller propounded additional written discovery on MTC, to which MTC responded timely on June 15, 2015. Thus, Miller had in his possession all of MTC's discovery responses from June. However, Miller waited until October 12, 2015 to file a motion to compel supplemental responses. He also moved for a continuance of the trial date and discovery deadline, which was ultimately granted. Miller's dilatory actions prolonged this litigation for more than a year.

3.  Miller filed a Motion to Compel on October 12, 2015, seeking supplemental responses to 32 discovery requests. After the parties had briefed the matters fully, the Court set a hearing on the motion. At the beginning of the hearing, Miller's counsel announced to the Court that he was dropping 22 of the 32 requests for supplementation.

4.  After MTC filed its Reply Brief in support of its summary judgment motion, which correctly pointed out that Miller failed to come forward with his prima facie case or to establish a genuine issue of material fact as to any element of his claims, Miller's counsel engaged in more childish pedantry by filing a motion to strike the reply. This Motion was baseless and unsuccessful.

22

[doc. no. 191 pp.5-6].

*i) Deposition Debacle*

The first of these four instances occurred when Plaintiff's counsel unilaterally noticed depositions of out-of-state defendant-deponents at locations hundreds of miles from their homes. Plaintiff's counsel unilaterally set the depositions of Warden Mack and Deputy Warden Daly without attempting to reach agreement with defense counsel on a date, time or place for the examination. Mack was then residing in Dayton, Ohio. His deposition was set over 300 miles away in Nashville Tennessee. Daly, then residing in Austin, Texas, was to be deposed in Dallas, Texas, almost two hundred miles away from her home.[20] Plaintiff's counsel also communicated that the defendant-deponents would have to bear their own expenses for attending the depositions.

Miller's attorneys refused to change the locations when requested. They eventually offered to conduct the depositions in the deponent's' respective *states* of residence but not in the *cities* where the deponents resided. Not only were the proposed locations an extreme inconvenience to the deponents, MTC's lawyers also expressed that they had a conflicting hearing in Mississippi for the scheduled dates; yet Miller's attorneys remained inflexible.

This debacle took place in February of 2015. It required attorneys for Mack and Daly, who were represented by separate counsel from MTC, to file a motion for a protective order [doc. no. 59]. MTC joined in that motion. [doc. no. 61]. Plaintiff's counsel, as they were prone to do over the course of this litigation, refused to sign a good faith certificate as required by Rule

---

[20] Plaintiff's attorneys say they initially proposed Jackson, Mississippi, or Memphis, Tennessee as locations for both depositions. [doc. no. 59-1]. When Defendants objected, Plaintiff then proposed Texarkana, Texas, and Nashville, Tennessee.[ Doc. 59-1]. Hattiesburg, Mississippi was also suggested by Miller's lawyers as a possible deposition location. [doc. no. 59-1 ]. Plaintiff's final proposal before the motion for protective order was filed was for the depositions to be conducted in Dallas, Texas, and Nashville, Tennessee.  [doc. nos. 59-3 and 59-4].

37(a)[21] of the local rules for the U.S. District Courts of Mississippi. This further demonstrates to this court that the actions of Plaintiff's attorneys were not, in fact, taken in good faith.

Miller's lawyers initially insisted that the party deponents could be deposed anywhere of Plaintiff's choosing.  After Defendant filed a motion for a protective order, Millers' attorneys changed their argument.  In their responsive brief, Plaintiff's lawyers  relied on Rule 45 of  the Federal Rules of Civil Procedure, which had been recently amended, to argue that because they had subpoenaed these defendants under Rule 45,[22] the defendant-deponents could be deposed anywhere within their respective states of residence.  Rule 45 (c)(1)(B) provides that a subpoena may command a person to attend a deposition within the state where the person resides, if the person is a party to the litigation.

The Magistrate Judge granted the motion for protective order filed by MTC, Mack and Daly.  In doing so, the Magistrate Judge cited *Petersen v. Peterson,* for the proposition that in federal litigation, it is presumed that the "defendant will be examined at his residence or place of

---

[21] RULE 37. DISCOVERY VIOLATIONS
(a) Good Faith Certificate.  Before service of a discovery motion, counsel must confer in good faith to determine to what extent the issue in question can be resolved without court intervention.  A Good Faith Certificate [Official Form No. 4] must be filed with all discovery motions.  This certificate must specify whether the motion is unopposed, and if opposed, by which party(ies) and the method by which the matter has been submitted to the magistrate judge for resolution.  The certificate must bear the signatures/endorsements of all counsel.  If a party fails to cooperate in the attempt to resolve a discovery dispute or prepare the Good Faith Certificate, the filed motion must be accompanied by an affidavit or a 28 U.S.C. §1746 declaration by the moving party detailing the lack of cooperation and requesting appropriate sanctions. L.U.Civ.R. 37(a).

[22] Rule 45(c) provides in pertinent part:
(**c**) **Place of Compliance.**
  (1) *For a Trial, Hearing or Deposition*.  A subpoena may command a person to attend a trial, hearing or deposition only as follows:
    (A) within 100 miles of where the person resided, is employed, or regularly transacts business in person; or
    (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
      (i) is a party or party's officer; or
      (ii) is commanded to attend a trial and would not incur substantial expense.

business or employment.'' *Petersen v. Petersen,* Civil Action No. 14-1516, ¶5 (E.D. La.12/2/2014) (citing *Farquhar v. Shelden*, 116 F.R.D. 72 (E.D. Mi. 1987)).  *Peterson* was decided after the 2013 amendments to Rule 45.  After conducting a  telephonic hearing and receiving briefs on the matter, the Magistrate Judge granted the motion and issued the protective order, continuing the depositions to a mutually convenient date and requiring that they be held in the cities where the defendants resided.

Plaintiff's counsel sought review by this district court of the Magistrate's ruling regarding the protective order, necessitating another round of briefing.  This court agreed with the Magistrate Judge that courts may exercise discretion in determining the location of depositions, and rebuffed plaintiff's proposition that Rule 45 requires a party to appear anywhere within his home state, regardless of inconvenience or hardship, without recourse.

Tellingly, after waging such a contentious battle, Plaintiff did not attempt to, and did not conduct, the depositions of Mack or Daly at all.  This fact, together with Plaintiff's attorneys' obstinate stance on this matter, lead this court to conclude that this entire effort was not pursued in good faith, but for purposes of delay and/or harassment.

Plaintiffs' counsel frequently engaged in gamesmanship regarding depositions, generally.  This was such an instance.  MTC had noticed the deposition of the Plaintiff for January 30, 2015, a date discussed and agreed upon by all parties.  On January 20, 2015, ten days before the scheduled deposition, Plaintiff had not provided all of  his discovery responses that were due to Defendant. MTC asked Miller's lawyers to provide the overdue responses.  Just two days before the scheduled deposition, on January 28, counsel for MTC learned that the discovery amounted to almost 7,000 documents. *Email Exchange* of 1.28.15  [doc. no. 60-2].  It then became necessary for MTC to postpone the deposition to allow for an opportunity to review Plaintiff's

'document dump' prior to Plaintiff's deposition. *Id.*  Consequently, Miller's deposition was re-noticed for March 6, 2015, a date agreed upon by both sides. [doc. no. 58].

Plaintiff's counsel, though, without discussion or agreement with Defendant, unilaterally set the deposition of Tene Wilson for March 2, 2015, two days before the agreed-upon date for Miller's deposition.  *Email Exchange* of 2/11/2015 [doc. no. 60-3].  MTC objected, primarily on the basis that the agreement had been for MTC to conduct Plaintiff's deposition before that of Tene Wilson. *Id.*  One of Defendants' lawyers was also unable to appear on the scheduled date.

Defendant's lawyers requested that Plaintiff provide additional dates for Tene Wilson's deposition  *after* Plaintiff's March 6, 2015 deposition. *Id.*  Plaintiff's counsel rejected that request. *Email from Reid Krell of 2.11.15* [doc. no.60-4].  MTC was forced to file a motion for protective order regarding this deposition and related issues.  The issue was ultimately resolved by agreement.

The Itemized Statement filed by MTC's attorneys, the law firm of Adams and Reese, lists **$5,960 for 26.6 hours** of legal work related to this entire deposition debacle that took place in February and March of 2015.  [doc. no. 206 p.6-7] and [doc. no. 205-1 p.3].  Fees for the instant matter are awarded under § 1927, and are assessed as a sanction against Millers' lawyers, James Scurlock and Matthew Krell, jointly and severally.  Attorney John B. Gillis also represented Plaintiff in this lawsuit, but Gillis' entry into the case was on December 15, 2015, well after this period.  This court has yet to determine the reasonableness of this fee amount utilizing the lodestar calculation, which will be done later in this opinion.

### ii) Motion to Compel and Delaying Tactics

The next two items found to be unreasonable and vexatious (items 2 and 3 above) are interrelated, and will be discussed together.  First,  Plaintiff's attorneys filed a motion to compel

Defendant to supplement discovery, at a time when they knew it was not likely that the responses could be completed prior to the discovery deadline.  The motion contained 32 requests to supplement, most of which were vague and baseless [doc. no. 105].

Secondly, Plaintiff's attorneys filed a motion for continuance [doc. no. 107], claiming they needed the additional time to procure the supplemental responses and to conduct other discovery.  Plaintiff had failed to seek the supplementation or to conduct any discovery for at least four months prior to filing the motions, but sought to use their dilatoriness to their advantage to obtain another continuance and delay the trial.

The original discovery deadline was July 24, 2015.  This period had previously been extended by the Magistrate Judge to August 24, 2015.   In April 2015, well before the scheduled August 2015 deadline, Miller had  sought a continuance of the discovery deadline and trial setting, in order, said Miller's attorneys, to complete discovery.  MTC consented to the continuance and the parties submitted a joint motion. The discovery deadline was moved to November 23, 2015.

In May of 2015, Miller had propounded additional written discovery to MTC.  MTC provided Miller with its responses to the discovery on June 15, 2015.  Despite having received the discovery in June of 2015, Miller's attorneys took no action until October 12, 2015, approximately four months later, and close to the discovery deadline, to file a motion to compel supplemental responses from MTC. [doc. no. 105].

Miller's attorneys contemporaneously moved for a continuance of the trial date and discovery deadline [doc. no.  107], using as justification, their inability to complete discovery by the November 23, 1015, deadline.  Defendant opposed the continuance, and pointed out in its opposition brief, that Plaintiff had asked for the previous extension of the discovery period, but

had only taken one deposition during that entire period.  Plaintiff also did not inform Defendant

of any issues with Defendant's discovery responses and did not conduct any discovery during the

preceding four-month period before filing the motions.

 Miller's  attorneys filed a 57-page motion to compel written discovery responses,

accompanied by a 75-page good faith letter and a 14-page brief.  Despite the voluminous

documents, Plaintiff did not provide the court with proper analysis or legal argument to support

his specific discovery requests. The supporting memorandum is a lengthy recitation of Plaintiff's

view of discovery in the case.  The limited authority provided is very general, and does not

address the reasons Plaintiff claims he is entitled to further responses regarding each of the

discovery requests.

After the parties had briefed the matters fully, the Magistrate Judge set a hearing on the

motion to compel.  At the beginning of the hearing, Miller's attorney announced to the Court that

he was dropping twenty-two (22) of the thirty-two (32) requests for supplementation.  There was

obviously no genuine need for these supplemental responses, or for the Motion to Compel or for

the continuance sought. This was not a legitimate attempt to obtain discovery, given that the

effort to obtain the information was so easily abandoned; but it was yet another example of

Plaintiff 's vexatious delaying tactics.

The Itemized Statement filed by MTC's attorneys, the law firm of Adams and Reese, lists

**$15,997** for legal work related to this motion to compel and the unnecessary motion for

continuance [doc. no. 205-2 pp.97-138]  This court awards attorneys' fees to Defendant for this

matter under § 1927, assessed as a sanction against Millers' lawyers, James Scurlock and

Matthew Krell, jointly and severally.   Although Attorney John B. Gillis entered his appearance

in December of 2015, while some of this dispute was ongoing, the motion to compel and the

motion for continuance had been filed prior to his entry into the case, and according to Attorney Gillis' declaration,  his involvement in discovery issues did not begin until March 11, 2016. *Gillis Declaration* [doc. no. 195].  This court has yet to determine the reasonableness of this fee amount utilizing the lodestar calculation, which will be done later in this opinion.

### *iii). The Motion to Strike Defendant's Reply brief*

The fourth and final sanctionable matter discussed in the order granting attorneys' fees in this case [doc. no. 191 pp. 5-6] was the Plaintiff's vexatious Motion to Strike MTC's Reply to the Summary Judgment Motion.  MTC filed its motion for Summary Judgment, seeking dismissal of all claims against it on June 24, 2016. [doc. no. 135].  As has been thoroughly discussed, no factual specifics or proof had developed as to any of the claims that remained at issue in the case – gender discrimination under Title VII, race discrimination under §1981, or wrongful discharge under state law (*McArn*).

Miller's brief in Opposition to Defendant MTC's Motion for Summary Judgment [doc. no. 144]  consisted mainly of a recitation of Miller's version of the facts without any evidentiary support, and an attempt to re-interpret *McArn* and its progeny.   Miller's attorneys argued that he was entitled to invoke the *McArn* exception to the at-will employment doctrine because a violation of the *DePriest* Decree includes the possibility of criminal sanctions down the road, if defendants were to be held in contempt. This is contrary to the jurisprudence of the State of Mississippi and of the Fifth Circuit.  Plaintiff offered authority attempting to show that a civil case could result in criminal penalties. None of these cases was considered criminal for purposes of a *McArn* claim, however, and none of these cases involved employment termination.

MTC filed its Reply brief, which was a rebuttal to Plaintiff's Opposition brief.  Plaintiff then filed a motion to strike that Reply [doc. no. 147], claiming the Reply raised new arguments and new evidence.

First, it must be noted that Plaintiff's motion did not comply with the requirements of the local civil rules for the Northern and Southern federal court districts of Mississippi.  In contravention to the provisions of  L. U .Civ. R. 7, [23] Plaintiff did not file a separate supporting memorandum of authorities. Plaintiff also failed to comply with the provisions of Rule 7 (2)(B), which prohibits the inclusion of legal argument or citations in the body of the motion.

Secondly, Plaintiff's counsel did not delineate or describe for the court each matter or issue in Defendant's Reply that they alleged to constitute a new matter.  Plaintiff's counsel did not prepare a memorandum in support of its Motion to Strike.  Instead, Plaintiff attached to his motion, a copy of MTC's Reply brief, with the allegedly offensive portions highlighted in red [doc. no. 147-1].  No discussion or analysis followed. The general and conclusory arguments made in the motion (as opposed to a supporting memorandum) did not provide any analysis of the specific highlighted matters in the exhibit and this court did not see that any new matters were raised by Defendant's Reply.

The motion to strike was unfounded, and vexatiously and unreasonably multiplied the

---

[23] Local Rule 7 provides in relevant part:

**(b) Motion Practice . . .**

(2) *Filing, Deadlines, Proposed Orders.*

… All affidavits, 28 U.S.C. § 1746 declarations, and other supporting documents and exhibits, ***excluding*** the memorandum brief, must be filed as exhibits to the motion, response or rebuttal to which they relate. The memorandum brief must be filed ***as a separate docket item*** from the motion or response and the exhibits. …

…

(B) Other than discovery motions under Rule 37, a motion may not exceed four pages, excluding exhibits, may contain only the grounds for the request and may not contain legal argument or citations to case law or other secondary authority. L. U .Civ. R. 7 (b)(2)(B).

proceedings.   MTC claims to have expended **23.9 hours and $4,955** in legal fees related to the motion to strike. See [doc. no. 205-1 p.3].

This court would award attorneys' fees to Defendant for this matter under § 1927, assessed as a sanction against Millers' lawyers, James Scurlock and Matthew Krell, jointly and severally.  This vexatious action, though, was committed by Plaintiff after June 13, 2016, the deadline for discovery.  Therefore, the fees earned for defending against this matter have already been included in the fees awarded under Title VII and § 1988.  Fees may be awarded to a prevailing party for continued pursuit of a frivolous action *or* as a sanction under §1927, but cannot be awarded for both on the same matter. This court is compelled to discuss this sanctionable conduct, even though choosing to award fees on a different basis.

### C.  Defendant's Itemized Fee Statement

In its order granting attorneys' fees, this court instructed MTC's counsel "to submit an itemization of fees it contends are appropriate, along with the required proof necessary for the Court to determine the proper award amount, within fourteen (14) days." *Order of January 26, 2018*. [doc. no. 191].

Defendant has made that submission, *Itemization Supporting MTC's Award of Attorneys' Fees* [doc. no. 205], and Plaintiff has filed his response objecting to same. *Plaintiff's Objection to Defendant's Fee Application,* [doc. no. 210].  This court now undertakes to determine the appropriate and reasonable amount of fees to be awarded to MTC for the unreasonable and vexatious proceedings described in the previous sections.

MTC contends the Court should do one of the following: First, says MTC, this court should award to it the full amount incurred in defending this civil action, a total of $256,846.00 (MTC posits that Miller, together with his two lead  attorneys, should be jointly and severally liable for this amount because the lawsuit was baseless from its inception through the present day. This

represents 1,164.1 hours.

This court chooses not to award to MTC all of the attorneys' fees claimed to have been earned by counsel for Defendant MTC.   In the experience of this court, this is an excessive amount for a case that was not tried to a jury, but was dismissed on summary judgment in favor of the Defendant, and was determined to be frivolous in the first instance.  The court is aware that the summary judgment ruling was appealed by Plaintiff, thereby forcing Defendant's attorneys to expend additional manhours defending against the appeal.  Even taking this into account, and also considering that Plaintiff's counsel vexatiously multiplied the proceedings, this court is of the opinion that the sum of $256,846.00, is excessive.

Secondly, and in the alternative, MTC says this court should award a significant portion of its earned fees, to be paid by two of Miller's attorneys, in the amount of  $100,356.00 for the 464.4 hours of legal work done after the second cancelled trial date, which Plaintiff needlessly and unreasonably caused to be continued.

The third option MTC presents is for this Court to award  $69,988.00 in fees under §1927, for the 324.8 hours expended on matters directly related to the specific instances and conduct described in the court's Order Granting Defendant's Motion for Attorney's Fees [doc. no.  191], that unreasonably and vexatiously multiplied these proceedings.  Defendant also requests from Plaintiff,  $5,461.38[24] in costs, and has submitted its computerized itemization for such.

---

[24] MTC's request for costs in its initial motion for an award of attorneys' fees totaled $3,759.23, which represented the amount it submitted to the Clerk of Court as its bill of costs.  The  $5,461.38 amount is based on its itemization of costs submitted with its Application for Attorneys' Fees. The latter appears to include the costs of computer assisted legal research, mileage expenses, meal expenses, photocopies, and pacer fees, that were not included in the bill of costs submitted to the Clerk of Court.

The party seeking attorney's fees bears the burden of proving the reasonableness of the number of hours claimed and the reasonableness of the hourly rate requested. *Lipscomb v. Columbus Municipal Separate School District,* 261 F. Supp.2d 626, 630-31 (N.D. Miss. 2003). The party seeking attorneys' fees also has the duty to submit "adequately documented time records to the court." *Watkins v. Fordice,* 7 F.3d 453, 457 (5th Cir.1993).

Defendant MTC submitted its *Itemization of Fees* [doc. no. 205] within the appropriate time. Miller's submission consisted of the following four items.

a. Declaration of H. Richard Davis, Jr.[doc. no. 205-1];
b. Itemization of Billing Records [doc. no. 205-2];
c. Itemization of Expenses [doc. no. 205-3];
d. Memorandum of authorities [doc. no. 206];

MTC's Itemization of Attorney's Fees is 189 pages long.  It includes descriptions of the work and the hours expended on each task by each person.  The total fees represented on the itemized statement are reflected below. Defendants' Counsel request a total of $256,846.00 for 1164.1 hours of legal work on this case, as follows:

| Name | Position | Hours | Rate | Total |
|---|---|---|---|---|
| R. Jarrad Garner | Partner | 620.1 | $250/hr | $155,061 |
| Benjamin Morgan | Associate | 271.9 | $190/hr | $ 51,661 |
| Lindsey Watson | Associate | 45.8 | $190/hr | $   8,702 |
| H. Richard Davis, Jr. | Staff Attorney | 203.8 | $190/hr | $ 38,722 |
| Michele Berry | Paralegal | 12.5 | $120/hr | $   1,500 |
| Virginia Cockayne | Paralegal | 10.0 | $120/hr | $   1,200 |
|  |  | **1,164.1** |  | **$256,846** |

The inquiry here is what constitutes reasonable attorneys' fees in this case for the matters for which this court has determined MTC should be awarded its attorneys' fees. This court first undertakes to determine the reasonableness of the hourly rate requested, which is the simpler of the two inquiries here.

*i) Hourly Rate*

The court must determine the appropriate hourly rate by "looking to the prevailing market rates in the relevant legal community. *McClain v. Lufkin Indus., Inc.,* 519 F.3d 264, 284 (5th Cir. 2008). See also *Missouri v. Jenkins,* 491 U.S. 274;  *Watkins v. Fordice,* 7 F.3d 453, 458-59 (5th Cir. 1993); *City of Riverside v. Rivera,* 477 U.S. 561, 568, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986)(citing *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). To do this the court considers the attorneys' regular rates as well as the prevailing rates of the area*. La. Power & Light Co. v. Kellstrom,* 50 F.3d 319 (5th Cir. 1995). In assessing what is reasonable, the attorneys' ability, competence, experience, and skill are taken into consideration.

The "relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits". *Scham v. District Courts Trying Criminal Cases,* 148 F.3d 554, 558 (5th Cir.1998). Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there. *E.g., Watkins v. Fordice,* 7 F.3d 453, 458 (5th Cir.1993) (party seeking fees submitted "affidavits from other attorneys in the community showing the prevailing market rates in the community"). "The burden is on the fee applicant to produce satisfactory evidence—in addition to the attorneys' own affidavits—that the requested rates are in line with those prevailing in the

community for similar services by the lawyers of reasonably comparable skill, expertise and reputation." *Blum v. Stenson, supra* at 896 n. 11.

Adams and Reese, the law firm representing MTC, has not provided such affidavits here. Adams and Reese has provided a declaration from one of its own attorneys, Richard Davis, stating that the fees are reasonable, and that the rates are comparable to or lower than the rates for similar services offered in the Jackson, Mississippi area. [doc. no. 205-1 p. 1,2]; however, Davis was, himself, one of the attorneys in this litigation.

The Court may also consider the attorneys' own regular rates in deciding on reasonable rates. See e.g., *La. Power & Light Co. v. Kellstrom,* 50 F.3d 319, 328 (5th Cir. 1995). Adams and Reese, however, also failed to submit any affidavits or declarations that would inform the court of its customary billing rate.

The hourly fee awarded must be supported by the record. *McClain v. Lufkin*, 649 F.3d 374, 383 (5th Cir. 2011) (cited in *Payne v. Univ. of S. Mississippi*, No. 1:12-CV-41-KS-MTP, 2016 WL 698130, at *4 (S.D. Miss. Feb. 19, 2016), aff'd, 681 F. App'x 384 (5th Cir. 2017)). Plaintiff's attorneys insist that failure to provide this information should result in an award of $0 per hour. This court does not agree.

To assess the appropriateness of the hourly fee amounts requested, this court may rely on other factors, as identified by the Fifth Circuit Court of Appeals. In *Walker v. U.S. Housing and Urban Development,* the Fifth Circuit Court upheld the fee rates as found by the district court, despite the attorneys not having submitted affidavits from other attorneys as to the customary rates. The district court in that case had based its decision on: 1) the hourly rate on awards made by other judges in the same federal court division; 2) previous awards in the same case; and 3)

the published billing rates of outside counsel retained by that party. *Walker v. U.S. Housing and Urban Development,* 99 F.3d 761, 770 (5th Cir. 1996).

Title VII and employment discrimination cases are frequently litigated in this court and attorneys' fees are often a part of that equation.  This court, on several occasions, has awarded hourly rates that exceed the amounts requested in this case.

The only attorney declaration presented to the court, that of Defendant's Attorney Richard Davis, claims that a reasonable hourly rate is $250 per hour for R. Jarrad Garner, a partner with the firm, and $190 per hour for each of the two associates and the staff attorney. The firm also requests $120 per hour for each of two paralegals *Declaration of H. Richard Davis, Jr.,* [doc. no. 205-1].

In *L & A Contracting Co. v. Byrd Bros.,* 2010 WL 1223321 No. 2:07-cv-57 DCB-JMR at*3 (S..D. Miss. Mar. 24, 2010), the district court was faced with the same dilemma as confronts this court.  The court there stated,

> This Court is familiar with the prevailing hourly rates in the community, and finds that $200.00 per hour is a reasonable hourly rate for all three attorneys, taking into consideration the attorneys' experience to the extent it was communicated to the Court, and the requisite skill necessary to represent the defendant properly in this case.

*L & A Contracting Co. v. Byrd Bros., Inc.,* Civ. No. 2:07CV57 DCB-JMR, 2010 WL 1223321, at *3 (S.D. Miss. Mar. 24, 2010).

This court, too, is familiar with the prevailing hourly rates in the Jackson, Mississippi area, and more importantly, with the legal rates it has awarded in the past for similar cases.  In *Alexander v. City of Jackson,* Mississippi, a Title VII and § 1983 case,  this court approved hourly rates for the local attorneys of $250 for the partner in the firm and $200 for the associate. *Alexander v. City of Jackson, Mississippi,* 456 Fed.Appx. 397 (2011) (unreported).  Since the hourly rates requested by the attorneys in the case *sub judice* are equal to or less than the hourly

amounts that have been previously approved by this court for Title VII cases requiring similar skills and experience, this court approves the hourly rates requested for the Adams and Reese attorneys, in the amount of $250 per hour for Jarrad Garner, and $190 per hour for attorneys Moore, Watson and Davis.

Generally, this court encourages the use of paralegals, since such utility can be very cost efficient for the client or the opposing party, as the case may be.  This court has often allowed paralegal fees in the past.  In the instant case, however, no information was provided concerning the experience or skill of the paralegals involved, and the court notes that some of the paralegal work performed is more clerical in nature than legal, such as "bates stamping" documents.  Only paralegal work that is legal in nature, as opposed to clerical in nature, is recoverable as attorney fees.  *Vela v. City of Houston,* 276 F.3d 659,681 (5th Cir. 2001).  Some of the paralegal entries include both --  legal and clerical work—and this court is not tasked with reviewing and categorizing each component of a block entry. It is the fee applicant's burden to prove the reasonableness of the hourly rate claimed, *Blum v. Stenson,* 465 U.S. 886, 895-96 (1984); but they have not done so with regard to the paralegal rates.  Therefore, this court is not allowing any fees for the paralegal work claimed.

Having determined the reasonable hourly rates allowable for the attorneys in this case, this court must next examine the number of hours expended on the relevant matters, in order to calculate the lodestar amount.

*ii)  Hours Expended*

This court must determine the reasonable number of hours expended by "weighing the hours claimed against the judge's own knowledge, experience, and expertise" concerning the time required to complete the activities claimed. *McClain v. Lufkin Indus. Inc.,* 519 F.3d 264,

284 (5th Cir. 2008).  This court must then reduce the hours to eliminate "all time that is excessive, duplicative or inadequately documented." *Id.*

This court though, is not awarding all of the reasonable fees earned by Defendant MTC's counsel in this case.  This court has determined that MTC is entitled to recover attorneys' fees from Plaintiff or Plaintiff's attorneys under §1927 for matters that this court deems to have vexatiously and unreasonably multiplied the proceedings and under Title VII and § 1983 for matters that this court found to have been frivolous and unfounded.

This court has found that MTC is entitled to attorneys' fees under §1927 as follows:

1. Plaintiff's attorneys' abusive discovery tactics regarding the out-of-state defendant-deponents and Plaintiff's and Tene Wilson's depositions. Defendant claims $5,960 for 26.6 hours of legal work.  *Itemization*  2/10/15-6/1/15 [doc. no. 205-2] and [doc. no. 205-1 p.3].

2. Legal work related to the motion to compel and for a continuance.  Defendant claims $15,997 for 72.6 hours of legal work on these matters.[25] *Itemization* 10/12/15-5/27/16 [doc. no. 205-2].

The total of attorneys' fees Adams and Reese claims to have earned for the above matters is **$21,957.**

This court has found that MTC is entitled to attorneys' fees under Title VII and §1988 for the following:

1.  Continued prosecution of this frivolous case after close of discovery. The total attorneys' fees claimed by Adams and Reese for this period was $88,663. *Itemization* 6/13/16- end  [doc. no. 205-2 ].

---

[25] The fourth item the court found in its previous order to have vexatiously and unreasonably multiplied the proceedings was Plaintiff's Motion to Strike Defendants' Reply to the Summary Judgment Motion. This matter, though, is covered under the  court's award of fees based on Title VII and §1988. Defendant claims $4,955 for 23.9 hours of legal work.

This amount must be reduced by $13,713, the amount Adams and Reese claims to have earned for defending against the appeal of the summary judgment motion, since this amount represents legal work exclusively on the *McArn* claim, a *state law* claim.  As earlier discussed, unlike sanctions under §1927, a prevailing defendant is only entitled to recover attorneys' fees under Title VII or §1988 for actions brought under the provisions of certain federal civil rights statutes.  This court also is not persuaded to award attorneys' fees for work on the appeal.

This results in a total of  **$74,950 (** $88,663 -$13,713),  claimed to have been earned and subject to an award under Title VII or §1988.

Adding the **$21,957** putative amount under §1927 and the **$74,950** putative amount under Title VII and/or §1988, this court arrives at ***$96,907***  as its starting point for calculating the lodestar amount.

A court must determine the reasonable hours expended by "weighing the hours claimed against [the judge's] own knowledge, experience, and expertise of the time required to complete such activities."  *McClain v. Lufkin Indus. Inc.*, 519 F.3d 264, 284 (5th Cir. 2008).  Further, the court should reduce the hours claimed to eliminate "all time that is excessive, duplicative or inadequately documented." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

This court has determined that the starting amount is ***$96,907 (*$21,957** putative amount under §1927 and the **$74,950** putative amount under Title VII and/or §1988).   This is the amount appearing on the billing statement submitted by Adams and Reese, that corresponds to the specific unreasonable and vexatious matters that this court found to have been caused by Plaintiff's multiplication of the proceedings and to the frivolous matters against which it was forced to defend.  This is merely the starting point, however. This court must make the lodestar calculation. This court already has determined what constitutes a reasonable *rate* for legal fees in

this lawsuit; however, this court is persuaded that the *amount* of time claimed by Adams and

Reese includes excessive, unnecessary or duplicative hours; thus, this court has a duty to

eliminate those extra hours.

*iii) Billing Judgment*

This court agrees with Plaintiff that the hours billed must be reduced for lack of billing

judgment.  Parties seeking attorney's fees must show the reasonableness of the hours billed and,

therefore, are charged with proving that they exercised billing judgment. *Walker v. City of*

*Mesquite,* 313 F.3d 246, 251 (5th Cir. 2002).  See also  *Green v. Adm'rs of Tulane Educ.*

*Fund,* 284 F.3d 642, 662 (5th Cir. 2002) ("Billing judgment requires documentation of the hours

charged ***and*** of the hours written off as unproductive, excessive, or redundant.) (emphasis

added); and *Saizan v. Delta Concrete Products Co., Inc.,* 448 F.3d 795 (5th Cir. 2006). According

to the Fifth Circuit Court of Appeals in *Saizan,* "[t]he proper remedy for omitting evidence of

billing judgment does not include a denial of fees but, rather***, reduction of the award by a***

***percentage intended to substitute for the exercise of billing judgment***." *Id.* at 799 (citing *Walker*

*v. Mesquite* 331 F.3d 246, 251) (2002) (emphasis added); In *Walker v. United States Dept. of*

*Housing and Urban Development,* the Fifth Circuit Court granted a fifteen percent reduction due

to lack of billing judgment, *Id.,* 99 F.3d 761, 770 (5th Cir. 1996) (a reasonable remedy allows for

a reduction of the number of hours by a percentage, which generally ranges from fifteen to

twenty-five percent).

In *Saizan v. Delta Concrete Products Co., Inc.,* the district court imposed a ten percent

reduction in the lodestar because of the lack of billing judgment and the Fifth Circuit found that

the district court acted well within its purview in so doing. *Id.,* 448 F.3d at 803. See also *La.*

*Power & Light Co., v. Kellstrom,* 50 F.3d 319,  336 (5th Cir. 1995) (affirming a trial court's

reduction of 15% for overstaffing).

The case of  *Hopwood v. State of Tex.,* 999 F. Supp. 872, 914–16 (W.D. Tex. 1998), is informative. There, as here, the district court was faced with voluminous time entries and evidence of both duplication and lack of billing judgment. The solution was a percentage reduction. The *Hopwood* court stated, "[i]t was impractical for the Court to wade through literally hundreds of time entries in order to assess a specific number of duplicative and excessive hours for each attorney."  The court there recognized that the proper remedy when there is evidence of a lack of billing judgment is to reduce the hours awarded by a percentage.

 After first making certain other reductions and disallowances to the plaintiffs' attorneys' fees,[26] the *Hopwood* court reduced the number of hours submitted by one group of plaintiffs' counsel by *twenty-five percent,* to account for duplicative work product and lack of billing judgment.  The court reduced the number of hours submitted by another group of plaintiff's counsel by *thirty-five percent,* finding what it called an extensive "padding" of attorney's hours*. Id.,* 999 F. Supp. 872, 914–16 (W.D. Tex. 1998).   On appeal, the case was affirmed in part and reversed in part, but the Fifth Circuit upheld the district court's ruling on attorneys' fees.  *Hopwood v. State of Tex.,* 999 F. Supp. 872, 914–16 (W.D. Tex. 1998), aff'd in part, rev'd in part sub nom. *Hopwood v. State of Texas*, 236 F.3d 256, 281 (5th Cir. 2000). On remand, the district court further reduced the fees by *fifteen percent.*

In *Carroll v. Sanderson Farms, Inc.*, a Texas district court case, a 50% reduction in attorneys' fees was made when counsel failed to demonstrate billing judgment, the majority of

---

[26] The district court denied the portions of the fee request for time spent on: "(1) public and media relations, (2) opposing the attempted interventions by other organizations, and (3) any legal work done after the remand in *Hopwood II* because the plaintiffs did not prevail on any issues after that remand. The court also reduced the number of hours spent for travel by half, stating that travel should be billed at a lower rate than active legal work.
*Hopwood v. State of Texas,* 236 F.3d 256, 262–63 (5th Cir. 2000).

entries were vague, and it was unclear whether fees were for clerical or legal work. *Carroll v. Sanderson Farms, Inc.*, No. H-10-3108, 2014 WL 549380, at *23 (S.D. Tex. Feb. 11, 2014). See also *Cole v. Orleans Par. Sheriff's Office*, No. 11-2211, 2013 WL 5557416, at *4 (E.D. La. Oct. 8, 2013) (50% reduction for failure to exercise billing judgment); *Preston Expl. Co. v. GSP, LLC*, No. H-08-3341, 2013 WL 3229678, at *9 (S.D. Tex. June 25, 2013) (noting that courts have reduced fees up to 50% for lack of billing judgment); *Peak Tech. Servs., Inc. v. Land & Sea Eng'g, LLC,* No. H–10–1568, 2012 WL 3234203, at *8 (S.D.Tex. Aug.6, 2012) (an award of 50% of the fees sought was reasonable in relationship to factors including the issues involved, the work required, and the result achieved").

In the case *sub judice*, defendant's attorneys have submitted over a thousand billing entries. This court already has concluded that the number of hours expended on this litigation appears excessive. Some of that excess is seemingly accounted for by Defense counsel's lack of billing judgment, as evidenced by the failure to exclude any hours or waive any fees. In any event, the law firm of Adams and Reese has not provided documentation to this court of any fees that have been waived. Consistent with the jurisprudence of the Fifth Circuit, if there is evidence of a lack of billing judgment, the proper remedy is a reduction of the hours awarded by a percentage intended to substitute for the exercise of billing judgment." *Walker v. Mesquite, Texas,* 313 F.3d 246, 251 (citing *Walker v. HUD*, 99 F.3d 761, 770 (5th Cir. 1996).

Accordingly, this court is persuaded to reduce the Defendant's fees by ten percent (10%) to account for hours that should have been written off as unproductive, excessive or redundant. This percentage falls squarely within the range that the Fifth Circuit says such reductions generally fall. *Walker v. HUD*, 99 F.3d 761, 770 (5th Cir. 1996); *Saizan v. Delta Concrete Prod. Co.,* 448 F.3d 795, 803 (5th Cir. 2006).

*iv. Duplication of Effort*

Four attorneys have submitted billable hours in this case on behalf of MTC.  Attorney Richard Davis only entered the case on July 14, 2016, when Attorney Benjamin Morgan withdrew.   For most of the life of this litigation, three attorneys for MTC have been working on this lawsuit at any given time.  As stated in *Johnson*, "[i]f more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized."  *Johnson v. Georgia Highway Exp., Inc.* 488 F.2d at 717.

In reviewing Defendant's Itemized Attorneys' fees, it is evident that there is some duplication of effort.  Work on the 12(b) motion to dismiss provides an example.

Jarrad Garner ("Garner") reports 15.3 hours working on the 12(b) motion to dismiss during the period from June 9, 2014, through August 26, 2014.  Lindsay Watson ("Watson") submitted a total of 23 hours for work on the same motion between July 14, 2014, and August 26, 2014, for a combined total of 38.3 hours expended.  The time/billing entries by both attorneys were described as "continued to work on and revise" Defendants' Rule 12(b)(6) Motion to Dismiss and Memorandum Brief.  Such an entry does not provide any insight into whether the two attorneys were working on the same or separate aspects of the 12(b)(6) motion. As this court previously has stated, in this court's experience, the number of hours expended on this case by defense counsel seems excessive, and this court is of the opinion this evidences some duplication of effort.

Between April 3, 2017, and April 6, 2017, Attorney Davis spent 22 hours drafting the memorandum on the motion for attorneys' fees [doc. no. 177].  Also during that time Attorney Garner claims 2.1 hours for work on the motion for attorneys' fees—more duplication.

Davis then lists 4 hours for drafting the reply to Plaintiff's response in opposition and

Garner lists .8 hours for reviewing and finalizing the same reply to Plaintiff's response in opposition; however, Plaintiff's response in opposition to this motion, as earlier discussed, did not even address the merits of the attorneys' fees request.  Plaintiff's response presented only one issue – that Adams and Reese had filed their motion for fees one day too late.  Defendant's reply brief was not three full pages long.

This court questions whether two attorneys were required to draft the attorneys' fee motion in the first instance; but this court need not question whether two attorneys were needed to draft the reply to Plaintiff's one-issue, defective, response.  They were not.  4.8 hours expended by two attorneys cannot be justified for drafting the reply.

Miller's legal team, having erred in its assessment of the timeliness of Defendant's attorneys' fees motion, filed a motion to amend their response, in hopes of gaining the opportunity to address the merits of Defendant's fee request.  Defendant's attorneys, naturally, fought this issue, and they were successful; however, three attorneys working on this issue is duplicative and seems excessive. First, on April 27, 2017, Garner reviewed the motion to amend at .3 hours, plus another .3 hours; Davis also reviewed the motion to amend on April 27, listing .9 hours; and finally, on April 28, Watson reviewed the motion to amend, claiming .5 hours. This represents a pattern of unnecessary duplication that should, perhaps, not be charged to the client, but certainly not to the Plaintiff or his counsel.

This pattern of duplication appears throughout defense counsel's billing records, including those matters this court is requiring Plaintiff to pay.  As the Texas district court said in *Hopwood*, *supra,* this court cannot be expected to wade through voluminous entries to "assess a specific number of duplicative and excessive hours for each attorney." *Hopwood*, 999 F. Supp. At 914-16.  There, the court was dealing with hundreds of entries. In the instant case, this court

must review thousands of entries and 189 pages of billing records. Again, a percentage reduction is the appropriate solution.

*v) Excessive Hours*

There are several instances in which this court finds that Defendant's attorneys billed for excess hours.

Plaintiff accuses Adams and Reese of inflating time billed for attending the depositions of Tene Wilson, Patricia Doty, Candice Miller, Chris Epps, and MTC.   As Plaintiff points out, the time claimed to be spent at depositions, in many instances, is greater than the documented length of time that the court reporter(s) indicated on the transcripts.  Plaintiff determinedly proclaims that these and other billing entries by Adams and Reese are fraudulent.  Defendant responds, that  "[s]ince the deposition took place years ago, it is impossible to say with any certainty what the extra time was; but the time was spent doing work related to the deposition." [doc. no. 223, p.3].   If counsel cannot determine what the time was for, this court certainly cannot. It is the burden of the party seeking fees sufficiently to document the work sought to be compensated, so the court can be satisfied that the time claimed was actually and reasonably spent on the case.  *Watkins v. Fordice,* 7 F.3d 453, 457 (5th Cirl.1993).

The difference is only a matter of a few hours.  Plaintiff's relentless cries of "fraud" notwithstanding, this court has no reason to believe the difference represents anything other than a mistake or inadequate documentation.  Nevertheless, the court is compelled to make an adjustment to compensate for the excess time billed. Plaintiff also contends that Garner billed 3 hours for preparation for the deposition of the Plaintiff, James Miller; yet, Garner did not attend the deposition.  MTC's counsel did not dispute this fact in their reply.

*vii) Lodestar Conclusion*

This court already has determined that the Adams and Reese law firm has evidenced a lack of billing judgment, which dictates a percentage reduction of ten percent (10%). This court also recognizes, based on its experience, that the number of hours and the amount of fees requested in this matter are excessive as compared to similar litigation. Therefore, in addition to the percentage reduction of hours to compensate for the lack of billing judgment, this court is persuaded that the requested hours must be reduced by an additional fifteen percent (15%), due to the duplication of effort and excess billing. The issues in this case were simple and straightforward. The very fact that Plaintiff's claim was frivolous should have lessened the hours of legal work required. It is true that Plaintiff filed several needless motions, and multiplied the proceedings unnecessarily, but the responses required to these matters were usually not difficult.

Consistent with the percentage reductions approved by the Fifth Circuit Court of Appeals, this court grants a total of twenty-five percent (25%) percent reduction due to lack of billing judgment, duplication of effort and excessive billing. See *Walker v. United States Dept. of Housing and Urban Development.,* 99 F.3d 761, 770 (5th Cir. 1996) (reduction generally ranges from fifteen to twenty-five percent); *Wiemer v. Rubino,* (a thirty percent reduction applied because of a significant number of unproductive, excessive, or redundant hours. No. 1:16CV99-LG-RHW, 2019 WL 2461817, at *5 (S.D. Miss. June 12, 2019).

In *Payne v. University of Southern Mississippi,* the court declined "to comb through eighty-four pages of billing entries and guess the amount of extra time that was expended on each one." *Id.,* 2016 WL 698130 *2 (S.D. Miss. Feb. 19, 2016). This court, likewise, declines to pour over every entry in the ***189-page*** submission by Adams and Reese to guess the amount of

extra time that was expended on each one; nor is the court required to recalculate every item that is duplicative or excessive. The United States Supreme Court has said, "[t]he Court's "essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice,* 563 U.S. 826, (2011).

This court, taking all these matters into consideration, determines the lodestar calculation to be ***$72,680*** ($96,907  less 25%). This amount is comprised of **$16,468** under §1927 ($21,957 less 25% ) and **$56,212** under Title VII and/or §1988 ($72,680 less 25%). This is the presumptive amount of the attorneys' fee award.

*vii) The Johnson Factors*

There is a strong presumption that the lodestar amount is a reasonable one; however, this court will review the *Johnson* factors to determine if the lodestar amount should be increased or decreased. The district court must address the reasonableness of the lodestar amount as a whole. *Hensley v. Eckerhart,* 461 U.S.424, 434 (1983). In exercising its discretion, the district court must articulate and clearly apply the *Johnson* criteria." *Giles,* 245 F.3d at 490 (citing *Riley v. City of Jackson,* 99 F.3d 757, 760 (5th Cir.1996)). The twelve factors articulated in the *Johnson* case are:

> (1) the time and labor required,
> (2) the novelty and difficulty of the issues,
> (3) the skill required to perform the legal services properly,
> (4) the preclusion of other employment,
> (5) the customary fee,
> (6) whether the fee is fixed or contingent,
> (7) time limitations imposed by the client or the circumstances,
> (8) the amount involved and the results obtained,
> (9) the experience, reputation, and ability of the attorneys,
> (10) the undesirability of the case,
> (11) the nature and length of the professional relationship with the client, and
> (12) awards in similar cases.

*Giles v. General Electric,* 245 F.3d at 490 n. 29 (citing *Strong v. BellSouth Telecomms., Inc.,* 137 F.3d 844, 850 n. 4 (5th Cir. 1998)); *Johnson v. Georgia Highway Express, Inc.,* 488 F.3d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds* by *Blanchard v. Bergeron*, 489 U.S. 87 (1989); *Union Asset Management Holding A.G. v. Dell, Inc.,* 669 F.3d 632, 642 & n.25 (5th Cir. 2012).

This court has been careful, as it must be, not to "double count" any criterion that has already been considered in calculating the lodestar, as it considers the *Johnson* factors. See *Black v. SettlePou, P.C.,* 732 F.3d 492, 502 (5th Cir. 2013); *In re Pilgrim's Pride Corp.,* 690 F.3d 650, 656 (5th Cir. 2012).  Several of the *Johnson* factors are generally considered during the process of calculating the lodestar amount and should not be considered again.

The first factor – time and labor-- is generally considered in calculating the lodestar.  And the United States Supreme Court has limited the second (novelty and difficulty of issues), third (skill), eighth (amount involved and results) and ninth (experience, reputation and ability of attorneys) factors.  See *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565 (1986) (citing *Blum v. Stenson,* 465 U.S. 886, 898–900 (1984)); *Shipes v. Trinity Industries,* 987 F.2d 311, 320 5th Cir. 1993) (*Shipes II*). Each factor will be discussed in turn.

The **first factor,** time and labor required, already has been considered in calculating the lodestar. This factor calls for the trial judge to weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities. *Johnson*, 488 F.2d at 717. This court has tried many employment discrimination cases and wrongful termination cases, including many with attorneys' fee awards, and the court  is quite familiar with the amount of time generally required.  As earlier noted, this court is of the opinion that the amount of time claimed is excessive for a case of this type, which was dismissed on summary judgment; but, this court already has reduced the fee award by twenty-five percent

(25%)  for lack of billing judgment, duplication and excessive hours billed; thus, no further adjustment is called for based on this *Johnson* factor.

In making its lodestar determination, this court has also previously considered the **second factor**, novelty and difficulty of the questions involved, and the **third factor**, the skill required to perform the legal service properly.  This court recognized that the issues in the lawsuit were simple, not complex or novel, and the case did not go to trial. No adjustment to the lodestar amount is necessary based on these factors.  Moreover, the United States Supreme Court has said enhancements based on these factors are appropriate only in rare cases supported by specific evidence.  *Alberti,* 896 F.2d at 936 (citing *Delaware Valley,* 478 U.S. at 565, 106 S.Ct. at 3098). No adjustment is necessary due to the second or third factors.

An adjustment to the lodestar is also not necessary based on the **fourth factor.**  The record does not establish Defendant's attorneys were precluded from taking on other cases because of this litigation.

The **fifth factor,** the customary fee, also has been considered by this court in making its lodestar assessment.  Although the Defendant did not provide affidavits from local attorneys to establish customary fees for the area, this court was able to establish appropriate hourly fees based on its previous similar awards, and awards by other courts within this jurisdiction.

The **sixth factor** is whether the fee is fixed or contingent.  Defendant's attorneys were paid on an hourly basis, which does not weigh in favor of an adjustment upward or downward.

In reviewing the **seventh factor,** time limitations imposed by the client or the circumstances, the court is reminded that Plaintiff's counsel unreasonably and vexatiously multiplied the proceedings; however, it is this conduct which led this court to award attorneys'

fees to Defendant under §1927.  This court, thus, is persuaded that this factor has been sufficiently considered.

The **eighth factor** requires this court to review the amount involved and the results obtained.  Defendant prevailed on all issues, and the case was dismissed on summary judgment in favor of  Defendant. As a prevailing defendant, though,  MTC is only entitled to an award of fees for those matters deemed to be frivolous by this court under Title VII and § 1988, and this court previously made that determination in its assessment of the lodestar amount.

The **ninth factor** requires this court to consider the experience, reputation, and ability of the attorneys.   This too, was considered in making the lodestar calculation.  See *Walker v. United States Dept. of Housing and Urban Dev.*, 99 F.3d 761,771 (5th Cir. 1996) and *Blum v. Stenson*, 465 U.S. 886, 899 (1984).   The defense of the instant case did not require extraordinary skill or ability and the defense attorneys have not made a showing that  extraordinary skill was demonstrated or required; so, these factors do not favor an upward or downward adjustment.

The record also does not support an adjustment due to the **tenth factor ,**  the undesirability of the case.  There does not appear to be anything about this case that would make it more undesirable than any other.

 This court takes a moment to discuss the **eleventh factor,** the nature and length of the client relationship.  Such relationships can affect how a legal firm bills its clients and the amounts it bills its clients.

The Adams and Reese attorneys state that MTC is a long-standing client and that it has handled similar matters for this client in the past. The law firm says it has submitted the same invoice amounts to MTC that it [Adams and Reese] submitted to this court, and that MTC has paid those amounts.   On its face, this would seem to indicate that the attorney's fees as itemized

by Adams and Reese constitute reasonable legal fees.  This court recognizes though, that law firms may have expectations from its long-standing clients that impact the number of hours expended for that client.  For instance, long-term clients, especially corporate clients, may expect that an experienced, senior attorney handle their matter, or that more than one attorney attend court proceedings and depositions on its behalf.  What this court looks at in determining a *reasonable* fee may bear little relationship to the agreements, explicit or implicit, that a law firm may have regarding how it represents and charges such a client.

The duplication of effort is apparent in Adams and Reese's itemized billing, which may be considered acceptable or even desirable by their client. This court, however, has awarded a grant of attorney's fees to the Defendant that will have to be paid by Plaintiff and/or his counsel. Therefore, these fees must be reasonable by this court's standards, as determined by all of the relevant factors established by the case law of this jurisdiction.  The appropriate reductions have already been effectuated as part of the lodestar calculation.  Therefore, this factor does not result in an increase or decrease to the lodestar amount.

The **twelfth factor**, and the last of the Johnson factors, requires the court to consider awards in similar cases.  In this litigation, the court is not considering the attorneys' fees to a prevailing plaintiff, but to a prevailing defendant.  Therefore, there was no winning recovery in this case, and the fact that Defendant prevailed in all aspects of the litigation has been taken into consideration in the court's decision to award attorneys' fees to Defendant. No additional adjustment is necessary.

Having thoroughly analyzed the *Johnson* factors, this court now concludes that adjustment to the lodestar amount is not warranted, and will not be made. The lodestar

calculation is *$72,680* ($96,907  less 25%).  This amount is comprised of **$16,468** under §1927

($21,957 less 25% ) and **$56,212** under Title VII and/or §1988 ($74,950 less 25%).

MTC stated it is not seeking attorneys' fees against John B. Gillis, even though Gillis

also represented Miller.  This court must, *sua sponte*, review the role that Gillis has played in this

litigation.

Gillis was not Miller's lawyer when the lawsuit was filed, and only entered the case

approximately a year and a half later, in December of 2015.  Gillis submitted an affidavit [doc.

no. 195], detailing those legal matters on which he worked.   According to Gillis, his main role in

the litigation was to research and present the *McArn* claim. [doc. no. 195 p.5].   Of those matters

that this court determined to be sanctionable under §1927, Gillis was, seemingly, a participant in

only one, the litigation surrounding MTC's application for attorneys' fees.

Attached to Plaintiff's 24-page "Memorandum in Support of his Objection to

Defendant's Fee Application,"  [doc. no. 211], was Gillis' voluminous declaration [doc. no.  211-

1], consisting of 59  single-spaced pages, plus 17 pages of exhibits.  In that declaration Gillis

attacked every aspect of Adams and Reese's Itemized Statement.  Some attacks were legitimate,

others, unfounded.  The "declaration" was not, in fact, a declaration, but a thinly veiled attempt

to expand Plaintiff's memorandum in opposition from 24 pages to 83 pages, beyond the page

limit established by the local rules and to pontificate against the practice of hourly billing.

Nevertheless, based on the legal matters Gillis says he worked on in this case (and there

is nothing to refute his declaration on this point), this court concurs with MTC's attorneys that

Attorney John B. Gillis should not be held jointly and severally liable with Krell and Scurlock

for the attorneys' fees awarded to MTC.

Attorneys James Monroe Scurlock and Matthew Reid Krell are jointly and severally liable, together with Plaintiff James Russell Miller, to Management and Training Corporation, for **$56,212** as attorneys' fees pursuant to Title VII and § 1988, for pursuing this frivolous matter even after discovery revealed Plaintiff did not have evidence to support his claims.  Additionally, Plaintiff's counsel vexatiously multiplied these proceedings, such that this court holds Attorneys James Monroe Scurlock and Matthew Reid Krell jointly and severally liable to Management and Training Corporation, for **$16,468** as attorneys' fees pursuant to 28 U.S.C. § 1927.

### D.  COSTS

Adams and Reese submitted an itemized request for costs totaling $5,461.38.  The report consists of 46 pages, much of which is undecipherable.  This court approves **$ 3,759.23** in costs, which represents the amount submitted to the Clerk of Court in the bill of costs.

| Item | Amount |
|------|--------|
| Taking and transcribing deposition of Tene Wilson | $   576.65 |
| Mileage expense to and from Walnut Grove Corr. Facility- B. Morgan 125 miles  @$0.575 per mile | $     71.88 |
| Taking and transcribing deposition of James Russell Miller | $ 1,629.50 |
| Mileage expense to and from deposition of P. Doty -Jarrad Garner 406 miles @$0.575 | $   233.45 |
| Deposition of P. Doty | $   343.75 |
| Deposition of Candice Miller | $   526.65 |
| Deposition transcript of MTC | $   274.60 |
| Deposition transcript of Christopher Epps | $   102.75 |
|  | **$ 3,759.23** |

This court notes that even in the face of a denial of attorney's fees, this court is not

precluded from awarding to the prevailing party, the costs of court.  E.g., *Jordan v. Sony BMG Music Entm't, Inc.,* No. H–06–1673, 2009 WL 1578237, at *3 (S.D. Tex. June 4, 2009) (awarding $0 in attorney's fees and $6,540.25 in costs); *Hervey v. Keltman Pharm., Inc., No.* 3:12-CV-625-CWR-FKB, 2015 WL 4673773, at *3 (S.D. Miss. Aug. 6, 2015).

## V. CONCLUSION

This court **grants** the application of Management and Training Corporation for attorneys' fees **[doc. no. 205]** in the following amount: ***$72,680*** .  These fees are payable jointly and severally by the Plaintiff, James Russell Miller, and  Plaintiff's attorneys of record, James Monroe Scurlock and Matthew Reid Krell in the amount of  **$56,212** and by Plaintiff's attorneys, James Monroe Scurlock, Matthew Reid Krell, jointly and severally in the amount of  **$16,468.**

This court awards to Management and Training Corporation as costs, to be paid by Plaintiff, James Russell Miller, the following amount**: $ 3,759.23.**

**SO ORDERED** this 27th day of September, 2021.

s/ HENRY T. WINGATE
UNITED STATES DISTRICT JUDGE